JONAS CUTLER v. SMITH & ROBBINS.

*Contract, written, parol. Accord and Satisfaction.*

After a simple contract is broken and damage thereby accrued, it cannot be discharged by parol without satisfaction or some consideration, though it may be before. But if the new agreement is upon good consideration and performed, it is a satisfaction and a defense, and it makes no difference that the prior agreement is in writing, and the new agreement verbal.

THE case was referred to a referee, who reported in substance as follows:

The plaintiff was the owner of certain premises used as a store and bakery, which he, on the 22d day of June, 1864, leased to Henry R. Horton and Peter Munkel for the term of five years. When the building was thus leased, certain machinery used therein in connection with the bakery was run by a small steam engine, and the water used for generating steam was conducted to the building by an aqueduct. On the first day of April, 1865, the defendant Smith and said Horton purchased the interest of Munkel, and carried on the baking business until about the first of September, 1866. During the summer of 1865, the aqueduct which conducted the water to the building failed, and Smith & Horton were obliged to obtain a supply by other means; and concluded that it would be more economical for them to dispense with the engine and put in a horse power. And in the spring of 1866, they obtained the plaintiff's consent to make some alterations in the basement of the building and to put in a horse power. In August or September, 1866, Horton quit the business, and the defendant Robbins then became interested as the partner of Smith, and on the 22d day of December, 1866, Horton, with the consent of the plaintiff, assigned his interest to the defendants. The engine and boiler remained in the building. On the 27th day of December, 1866, the written agreement between the plaintiff and the defendants of that date and hereto annexed was executed, and the defendants occupied the premises with the engine and boiler therein, till the 10th day of April, 1867. They were, however, anxious to have them taken out of the building to give them more store room, and they wanted a door cut on the north side of the basement leading out of the work-room to the back yard of Herrick & Wyman, for the purpose of ventilation, and to accommodate them in getting to a cellar they had leased of said

Herrick & Wyman, and which they then occupied, and on several occasions spoke to the plaintiff about it.

On the 10th of April, 1867, the parties made a verbal agreement that the defendants might remove said engine and boiler from the building at their expense, on condition that they were to plaster overhead and lay a floor underneath where the boiler was, and if the plaintiff ever wanted it back he was to put it back at his own expense. Under this agreement nothing was said about who was thereafter to take charge of the engine, or of its then condition ; but from the facts proved and circumstances, I find that the parties then regarded the engine and boiler as delivered to and accepted by the plaintiff, and wholly subject to his control, although the principal parts of it remained in the building and upon the premises occupied by the defendants after it was removed.

The verbal contract was made in the morning, and the parties went immediately to work and removed the engine and boiler from the building. The plaintiff was present a part of the time and advised and assisted in their removal, took charge of some of the pipe connected with the engine and assisted to block up the boiler in the yard, where it remained afterwards. After the engine was removed, the principal portions were stored in the basement of a building occupied by the defendants, and some parts lay out in the back yard, all of it where the plaintiff, who was frequently at the bakery, could see it and understand its condition.

The defendants did replace the parts of the building and the windows and doors that were removed for the purpose of putting in the horse power, according to the agreement entered into on the 27th of December, 1866. They did the plastering over head and laid the floor according to the verbal agreement made on said 10th day of April, and they fulfilled their part of the agreement made on that occasion. The engine was a good deal injured by neglect. It would have cost $300 to put it in repair, replace it and the boiler in the building, and put it in good running order, but it then would have been worth $100 more than when it was taken out. If the defendants were bound to replace the engine and boiler in the building, the plaintiff was damaged by their neglect two hundred dollars, and he ought to recover that sum with lawful interest thereon from the termination of said lease. According to said written agreement of Dec. 27, 1866, it was the duty of the defendants to take down said engine, and clean and properly oil it. Machines of this kind injure by standing unused unless properly attended to. The plaintiff, on several occasions

previous to the 10th day of April, 1867, requested the defendant Robbins to take the engine to pieces and clean it, but the defendants neglected to do so, and never cleaned it. To what extent the engine suffered from this neglect previous to said 10th day of April, the evidence does not very satisfactorily disclose, but from the evidence I find that it was injured by such neglect previous to the said 10th day of April ten dollars, and if from the facts reported, the plaintiff is not entitled to recover said $200, but is entitled to recover for this neglect, I find that he should recover the sum of ten dollars, and interest thereon from April 10th, 1867. If from the facts reported the court consider the verbal contract made April 10th, 1867, after the breach of the contract to clean the engine, is in law an answer and defense to such breach of contract, I find that the parties then understood that the agreement then made covered all claim on the part of the plaintiff, under the contract in writing executed December 27, 1866, relative to the condition of said engine at that time, and that the plaintiff is not entitled to recover for said injury incurred previous to said 10th day of April.

The agreement of December 27th, 1866, between Jonas Cutler and said Smith & Robbins, was as follows:

In consideration that the said Cutler has heretofore leased unto the said Smith & Robbins, his the said Cutler's tenement in Cutler's block, situated in said Brattleboro, for the purposes of a store and bakery, and in consideration that the said Cutler has consented that the said Smith & Robbins may use horse power instead of the steam engine now in said building, the said Smith & Robbins hereby agree to take to pieces said engine, and clean the same, and at the expiration of said lease to put said engine together again and leave it in good running order, ordinary wear and tear excepted. And also the said Smith & Robbins, having removed sundry doors and windows and made some alterations in said building, for the purpose of using to advantage said horse power, hereby agree to and with said Cutler, that at the expiration of the lease aforesaid, they will replace those portions of said building so removed as aforesaid, and will leave the same in the condition it was before said alterations were made, ordinary wear and tear excepted, and loss by fire excepted.

The county court having accepted the report of the referee and rendered judgment thereon for the plaintiff to recover the sum of ten dollars, as found by said referee, both parties excepted.

*Clarke & Haskins* and *C. N. Davenport*, for the defendants, argued that parties to a simple agreement in writing, by a subsequent verbal agreement, founded upon a new consideration, may, in the language adopted by PROUT, J., in *Flanders* v. *Fay*, 40 Vt., 316, " enlarge the time of performance—may vary the terms of the contract, or may waive and discharge it altogether." *Porter et al.* v. *Stewart*, 2 Aik., 417 ; *Lawrence* v. *Dole*, 11 Vt., 549 ; *Sherwin et al.* v. *Rut. & Bur. R. R. Co.*, 24 Vt., 347 ; *Field, Adm'r*, v. *Mann*, 42 Vt., 61 ; *Goss* v. *Lord Nugent*, 27 E. C. L., 33.

*George Howe* and *Field & Tyler*, for the plaintiffs, maintained that it is a well established principle of the common law, that a contract in writing cannot, *after breach*, be discharged by words. *Langdon* v. *Stokes*, Croke's Charles, 380 ; Buller's Nisi Prius, 152 ; *Milward* v. *Ingram*, 2 Mod., 43 ; 1 Mod., 36 ; *Edwards* v. *Weeks*, 2 Mod., 59 ; Swift's Digest, 300 ; *Hotchkiss et al.* v. *Downs*, 2 Conn., 138 ; *Lawrence* v. *Dole*, 11 Vt., 555 ; *Bender et al.* v. *Sampson et al.*, 11 Mass., 44 ; *Buell* v. *Miller*, 4 N. H., 196 ; *King* v. *Gillette*, 7 M. & W., 56 ; *Rhodes* v. *Thomas*, 2 Carter, (Ind.,) 638 ; *Flanders* v. *Fay*, 40 Vt., 316.

The opinion of the court was delivered by·

PECK, J.   By the written contract between the plaintiff and defendants, of December 27, 1866, the defendants, among other things, agreed to take to pieces the plaintiff's engine, then in the building leased by plaintiff to the defendants, and clean the same, and at the expiration of the lease put it together again and leave it in good running order, ordinary wear excepted.   The referee having found that the defendants performed the other stipulations in that contract on their part, the question presented is whether, upon the facts found by the referee, the defendants are liable for neglecting to perform this stipulation in relation to the engine, which it is not claimed on the part of the defense that they ever did perform.   This depends upon the legal effect of the subsequent verbal agreement between the parties, of April 10, 1867, and what was done under it.   By this verbal agreement

it was stipulated, among other things, that the defendants might remove the engine and boiler from the building at their expense, on condition that they were to plaster overhead and lay a floor under where the boiler was ; and if the plaintiff ever wanted it back he was to put it back at his own expense. The engine and boiler, under this agreement, were immediately, the same day, removed by the defendants, under the advice and with the assistance of the plaintiff. The referee finds that previous to this agreement of April 10, 1867, the engine had been injured to the amount of $10, by the neglect of the defendants to take it down and clean and oil it, as it was their duty to have done under the written contract of December 27, 1866. The referee having found that at the time of the making of the contract of April 10, 1867, it was understood that that agreement then made covered all claim on the part of the plaintiff under the contract in writing executed December 27, 1866, relative to the condition of said engine at the time, finds that the plaintiff is not entitled to recover for such injury incurred previous to April 10, 1867, if in law the agreement of April 10, 1867, under the facts reported, is a defense to such breach of the contract of December 27, 1866. As to the plaintiff's claim for any neglect of defendants subsequent to April 10, 1867, when the verbal agreement was made, and the engine moved, the referee finds that at the time of the making of the last named contract and the removal of the engine in pursuance of it, as above stated, the parties then regarded the engine and boiler delivered to and accepted by the plaintiff, and wholly subject to his control, although the principal parts of it remained in the building and upon the premises occupied by the defendants, after it was removed, but where the plaintiff frequently was, and could see its condition. There is no ground left by the finding of the referee upon which the plaintiff can recover either the $10 or the $200, unless there is some technical objection to giving effect to the verbal agreement of April 10, 1867, and what was done under it, according to the intent of the parties. After a simple contract is broken and damage thereby accrued, it cannot be discharged by parol without satisfaction or some consideration, though it may be before. But if the new agreement is upon good

consideration, and performed by the defendant, it is a satisfaction and a defense; and it makes no difference that the prior agreement is in writing, and the new agreement verbal. The verbal agreement of April 10, 1867, was upon good consideration and fully performed by the defendants, and is a complete defense to the entire claim of the plaintiff under the written agreement of December 27, 1866.

Judgment reversed, and judgment for defendants.