SAMUEL T. SOPER & others *vs.* JEROME F. MANNING
& another.

Suffolk.    March 27, 1888. — May 7, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Equity Jurisdiction — Equity Practice — Appeal.*

This court has jurisdiction in equity to compel a person, who has in his possession a United States Treasury draft issued for the amount of an award by the Court of Commissioners of Alabama Claims for the "oil catch" of a vessel captured on the high seas by an insurgent cruiser, and payable to the "owners," to deliver the draft to such owners.

A bill in equity by such owners alleged that they were to distribute the proceeds of the draft among those entitled thereto; that the person who retained the draft and another claimed certain percentages of the amount thereof in payment of their services in obtaining the award under agreements averred to be champertous. A master found that the agreements were legal, and the final decree ordered the draft to be delivered up, and allowed the claimants their commissions, whereupon a motion was made that such commissions might be retained by the plaintiffs as damages for the detention of the draft. *Held,* that others beneficially entitled to the draft were not necessary parties plaintiff; that both the claimants were properly made parties defendant; and that the motion could not be granted.

The only question, upon an appeal from the final decree of a single justice of this court, sitting in equity, without a report of the evidence, is whether the decree was warranted by the allegations of the bill.

BILL IN EQUITY alleging that the plaintiffs were the "owners of the claims for the capture" of the schooner Mermaid, at the time of her capture on the high seas by an insurgent cruiser; that "judgment was rendered in the Court of Commissioners of

Alabama Claims, at Washington, D. C., for the oil catch of the said schooner Mermaid, that is, the value of the oil on board at the time of her capture, to be received and distributed by the said owners according to law among the respective parties entitled thereto in their due proportion in the sum of $5,018.61 "; that the Treasurer of the United States had sent to the defendant Manning a draft on the assistant United States Treasurer at Boston for the amount of the award, payable to the plaintiffs; that the defendant Manning claimed to have acted for the owners of seven sixteenths of the vessel in obtaining the award, and to be entitled to twelve and a half per cent of their portion of the award by virtue of certain agreements with them; that the other defendant, Francis A. Perry, claimed to have represented the owners of nine sixteenths of the vessel in obtaining the award, and to be entitled to twelve per cent of their proportion of the award by virtue of like agreements with them; that the defendant Manning claimed that the payment of his percentage of the award was a first lien on the draft; that the defendant Perry claimed a lien upon the draft in the possession of the defendant Manning for his percentage of the award; that the agreements alleged to have been made between the defendants and the plaintiffs were champertous and void; that the defendant Manning, though often requested, refused to deliver the draft to the plaintiffs; that if the agreements between the defendants and the plaintiffs were valid, the defendant Manning was entitled to $274.47, and the defendant Perry to $358.76; and that sums exceeding these amounts had been tendered to the defendants and paid into court.

The prayer of the bill was that the defendant Manning might be decreed to deliver the draft to the plaintiffs without the previous payment of any sum of money to him or to Perry; that it might be decreed what sums should be paid to Manning and Perry, if any, prior to the delivery of the draft to the plaintiffs; that Manning might be decreed to pay to the plaintiffs damages because of his delay in delivering the draft to them; and that the plaintiffs might be allowed costs.

The defendant Manning demurred to the bill for want of equity, for the reason that the plaintiffs had a plain, adequate, and complete remedy at law, for want of jurisdiction, for multi-

fariousness, for misjoinder of parties, for insufficiency of tender, and for lack of parties.   C. Allen, J., overruled the demurrer, and subsequently, at a hearing upon the pleadings and the report of a master, to whom the case was referred upon answers being filed by the defendants, and who did not report the evidence, made a decree that the defendant Manning deliver the draft to the plaintiffs; that they recover costs against the defendants; that the defendants should receive $274.47 and $358.76 respectively, after deducting costs out of a fund paid into court by the plaintiffs; and that the plaintiffs should have the residue of the fund.   The defendant Manning appealed to the full court.

J. F. Manning, pro se.

N. W. Ladd, for the plaintiffs, moved that the decree be so far modified as to award to them the balance of the sum of $274.47, after deducting the costs taxed against the defendant Manning, as compensation for the damages suffered by them from the detention of the draft.

DEVENS, J.   The bill sets forth that the plaintiffs are the owners of the claims for the capture of the schooner Mermaid, during the late civil war, and that a judgment for the sum of $5,018.61 was rendered in their favor in the Court of Commissioners of Alabama Claims, for the " oil catch " of the schooner, that is, the value of the oil on board of her at the time of capture, to be received and distributed by the said owners according to law among the respective parties entitled thereto in their due proportion; that the defendant Manning has received a Treasury draft for this sum on the Assistant Treasurer of the United States at Boston, payable to said owners, the plaintiffs. It further sets forth that Manning claims to have acted for the owners respectively of seven sixteenths of the schooner, and Francis A. Perry to have acted for the owners respectively of nine sixteenths thereof, in obtaining said judgment; that Manning alleges that he is entitled to twelve and a half per cent on seven sixteenths of the amount of the draft representing the judgment, by virtue of a contract made for the payment of this amount if the claim should be recovered; and that Perry alleges that he is entitled under and by virtue of a similar contract to twelve per cent on nine sixteenths thereof, and to a lien there-

for on the draft, which is in the hands and possession of Manning. The bill further alleges, that these are pretended agreements, which are champertous and void, but avers a willingness to pay them so far as the contracts under which they arise shall be found valid.

The defendant Manning has assigned numerous grounds of demurrer, the one principally relied on being that this court has no jurisdiction of this matter. His contention apparently is, that, as the original claim grew out of the capture of the Mermaid on the high seas by a cruiser of the insurgent States, the draft in controversy must be treated as if it were actually the cargo of oil and bone known as the " catch," for which the judgment was awarded; that this sum is the joint property in various proportions of the owners, the officers, and the crew of the Mermaid; and that, as this is a maritime contract, the respective or proportionate rights of all interested can only be settled in an admiralty court.

Rejecting the many facts which the defendant Manning has introduced into his brief, and confining ourselves to the bill, it would be sufficient to say that it does not appear therefrom that any other person than the plaintiffs have any right whatever in the proceeds of the capture. They aver themselves to be " the owners of the claims for the capture" of the Mermaid; for aught that appears, the officers and crew may either never have had any interest in the " catch," or may have parted with it to the plaintiffs.

But if this were otherwise, by virtue of the judgment rendered, the plaintiffs are entitled to the draft as owners of the vessel, which authorizes them to receive it and distribute its proceeds to the respective parties entitled thereto, in their due proportion. It affords Manning no excuse for detaining this draft, because, if the plaintiffs receive it, they are to take it charged with a trust for the benefit of other parties as for the officers or the crew of the vessel. The general property is that of the owners, even if others may have an interest in its proceeds. It was not necessary to make them parties to this bill. Nor, if a case was presented where it was necessary to determine in what proportions owners, officers, and crew were entitled to a fund, into which the " catch " had been transmuted, would

there be any difficulty in so doing in this court, or any necessity of resorting to an admiralty court. While peculiar remedies, differing in some respects from those in ordinary legal proceedings, there exist, yet the rights and liabilities growing out of maritime contracts are daily passed upon in courts of law and equity. If there are in fact any officers or crew who are entitled to any portion of the fund awarded to the plaintiffs, and they are in any danger of losing it, they are not remediless. It is not easy to see how they are in any safer position by permitting the draft to remain in the hands of Manning, who has obtained it only as the attorney of the owners.

The claims made respectively by Manning and Perry rendered a bill in equity the proper mode of adjusting their rights. The demurrer of the defendant Manning, which we have considered, having been overruled, he answered, and the facts have been found by a master; his report of the evidence is not before us, and there is, therefore, no question except whether the final decree from which Manning has appealed conforms to the allegations and prayers of the bill. It appears that it does thus conform. *Iasigi* v. *Chicago, Burlington, & Quincy Railroad*, 129 Mass. 46. *McConnell* v. *Kelley*, 138 Mass. 372.

The decree awards to Manning the sum of $274.47, as the amount of the commissions justly due, the contract made with him having been found to be a legal one. It is not now contended to have been illegal, but the plaintiffs move that they may be decreed to be entitled to retain this sum (as reduced by the bill of costs which the decree entitled them to deduct) as compensation or damages for the detention of the draft by Manning. There is, however, no good ground for this, in view of the fact that the plaintiffs originally denied to him any right to the compensation under his contract to which the master has found him entitled.        *Decree affirmed.*