## FRED C. DAVIS v. J. C. FARWELL.

October Term, 1906.

Present: TYLER, MUNSON, WATSON, POWERS, and MILES, JJ.

Opinion filed May 20, 1907.

### Attorney and Client—Attorney's Lien—When Permissible— Book Account—Evidence.

Though an attorney's lien on money in his hands is denied by the client for whom it was collected, the attorney may pay over the whole fund, without prejudice to a subsequent suit for his fees.

In an action by an attorney for services in making a certain collection, his right of recovery is not affected by the fact that, on demand, he paid over all of the collection in his hands, and took and retained a receipt therefor, stating that the payment was "in settlement" of the money collected.

A charge is not essential to a right of recovery for services rendered; but a charge, or a mistaken charge, or the failure to charge may be important evidence as to the right of recovery.

The relation of attorney and client is one of trust and confidence, and requires the utmost good faith on the part of the attorney.

Where an attorney has done his client's business with due fidelity, he may hold any of his client's money or papers, that come into his hands in the course of that business, as security for the payment of his fees.

It is not decided what rule governs as to an attorney's right to pay for services rendered in making a collection, where, though the services are of some benefit to the client, the attorney detains the client's money in bad faith, and not honestly as security for the payment of his fees, thereby forcing the client to sue for the money collected.

In an action of Book Account by an attorney for services in making a collection, the auditor's report examined, and *held* that it fails to show that plaintiff detained the proceeds of the collection in bad faith, and not honestly as security for the payment of his fees.

An attorney, when asked by his client to account for $15 in his hands as part of the proceeds of a collection, insisted upon retaining that

money as payment for his services in making the collection, but finally agreed to retain only $5 for his services and to pay over the balance as soon as he could. Later the client demanded payment of the whole sum, thereupon the attorney paid it over, and immediately brought this suit to recover for his services in making the collection. *Held*, that plaintiff's agreement to retain only $5 for his services and pay over the balance was without consideration, and so not an accord and satisfaction, and that the client repudiated that agreement by demanding and receiving the whole amount collected.

In Book Account by an attorney to recover for services, defendant's evidence, offered for the purpose of showing that plaintiff had harassed him, that defendant had been twice sued on the same matter, but without indicating when the suits were brought nor how they resulted, was properly excluded as immaterial.

In Book Account by an attorney to recover for services in a collection made through a foreign attorney, plaintiff testified in his opening, without objection, as to how much he had received from the foreign attorney and what his charge was, and then, in corroboration, offered the latter's letter which stated that the writer had received $25, retained $10, and remitted $15 to plaintiff, which letter was excluded, on defendant's objection. On cross-examination, plaintiff denied having told defendant that the foreign attorney had collected $40, retained $15, and remitted $25 to plaintiff, as defendant subsequently testified, but admitted having had a talk with defendant in which he told him as he had testified in direct, and that he then showed him the letter. *Held*, that the letter was properly admitted in rebuttal, not as proof of its contents, but as bearing upon the probability of whether plaintiff would have made the statement testified to by defendant.

BOOK ACCOUNT. Heard on the auditor's report and exceptions thereto, at the June Term, 1906, Windsor County, *Rowell*, J., presiding. Judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Davis & Davis* and *F. H. Clark* for the defendant.

An attorney cannot recover for services, which, by reason of his unfaithfulness, are of no benefit to his client. *Bracy* v.

*Carter*, 12 A. & E. 373; *Hill* v. *Featherstonbough*, 7 Bing. 569;
1 Parsons on Contract, 123; *Brodin* v. *Kingland*, 4 Wats. (Pa.)
420; *Currie* v. *Cowles*, 6 Bosw. 452; *Herrick* v. *Cutley*, 1 Daly
512; *McClosky* v. *Gleason*, 56 Vt. 264; *Spaulding* v. *Wakefield*,
53 Vt. 660; *Farwell* v. *Shaw*, 46 Vt. 468.

*F. C. Davis* for the plaintiff.

MILES, J.   This is an action in book account brought by
the plaintiff, an attorney at law, against the defendant, to recover
for professional services.   The case was tried by an auditor who
reported in substance, among other things unnecessary to state,
that in September 1898, the defendant employed the plaintiff
to make a collection against one Hope of Fitchburg, Mass.   The
plaintiff turned the matter over to J. E. McConnell, a Fitchburg
attorney, to assist him in its collection, by whom a suit was
shortly thereafter brought against the debtor, Hope.   The plain-
tiff retained the general charge of the matter, wrote several
letters regarding it, and went to Fitchburg at least once to see
about this and another demand which he held against Hope in
favor of another client.

About March 1, 1899, and after said suit was brought,
Hope paid McConnell twenty-five dollars on defendant's claim
against him, and sent forty or forty-one dollars direct to the
defendant.   The report does not show whether the sum paid to
McConnell and the sum sent to the defendant settled the whole
demand of the defendant against Hope; but in view of the fact
that McConnell sent fifteen dollars of the twenty-five to the
plaintiff and retained ten dollars for his own fees in that suit, it
is fairly inferable that the matter was then closed.   However that
may be, the auditor has found that the plaintiff never received
on account of that collection, more than the fifteen dollars so
sent to him by McConnell.   This sum he appropriated to his
own use, and when called upon by the defendant to account for
it, in the following June, he claimed to be entitled to it on account
of services rendered in making that collection.   The defendant
objected to the plaintiff's charge, and thought that five dollars
was as much as the plaintiff was entitled to receive.   Finally
the plaintiff told the defendant that he would take five dollars
for what he had done in the case and promised to pay the balance
as soon as he could.   The defendant did not consent to this delay

and thence continued to dun the plaintiff from time to time until Feb. 1, 1904, when he put the matter into the hands of G. A. Davis, an attorney of Windsor, Vt., who immediately wrote to the plaintiff demanding pay in full of the sum received by him. The plaintiff thereupon sent Davis his check for ten dollars, which was immediately returned to the plaintiff in a letter declining to accept that sum in full, and insisting upon the plaintiff's paying the full sum which he had collected and then had in his possession. The plaintiff then sent Mr. Davis his check for fifteen dollars and in due time received from Mr. Davis a receipt, stating that he had received that sum "in settlement of money collected of Mr. Hope.". This receipt was received by the plaintiff about February 6, 1904, and on the 11th day of the same month, he sent to the defendant a bill demanding of him ten dollars for his services in making the Hope collection, and therein notifying the defendant that unless the same was paid within five days from that date suit would be brought. The defendant not paying within the time named, this suit was brought. In the justice court the plaintiff sought to recover only the sum of ten dollars and he recovered judgment in that court for only that amount and costs. In the county court his specifications were for fifteen dollars and he sought to recover that sum in that court.

The first claim made by the defendant is, that the facts found by the auditor entitle him to a judgment: first, because the plaintiff yielded to the defendant's demand, and paid the full sum collected without deducting anything for his services for which he now sues; second, because he kept the receipt sent to him by Mr. Davis; third, because the plaintiff never made any book charge of his account until he paid the fifteen dollars and then only charged ten dollars; fourth, because his services were of no value to the defendant; and fifth, because he was unfaithful to his client in not paying over the money on demand.

We do not think the plaintiff disentitled himself to any debt that the defendant owed him, by acceding to the demand of the defendant to pay him the full amount of the sum collected. Where the attorney's lien upon the fund in his hands is denied, he may pay over the whole amount and will then be entitled to a subsequent action against his client for his fees. *Walton* v. *Dickerson,* 7 Pa. St. 376. By turning the whole sum over to the defendant, the plaintiff simply released his lien upon the sum

collected, but retained his debt against the defendant, secured only by his personal undertaking. When the money was collected and came into the possession of the plaintiff, he took it with the right to hold it until his fees were paid, as security for the payment of his debt against the defendant. *Hutchinson et al.* v. *Howard et al.,* 15 Vt. 544; *Hulbert* v. *Brigham,* 56 Vt. 368. If the plaintiff saw fit to relinquish his right of lien, even under threat of the defendant's attorney, he relinquished no right to his debt secured by that lien; for the two debts stood distinct and independent of each other, subject to enforcement in independent suits. *Walton* v. *Dickerson, supra.* Therefore, when the plaintiff paid to the defendant's attorney all that he had received on the Hope collection, he still had his debt against the defendant for his reasonable compensation for services rendered, if not otherwise disentitled.

We think his right to recover was not affected by the retention of Mr. Davis' receipt. That simply shows that the plaintiff has settled with the defendant for the money collected. Neither is the plaintiff precluded from a recovery beecause he made no charge for his services at the time they were rendered. A charge is not necessary to a right to recover. The debt is not created by the charge. The charge as made, or the omission to charge, may serve as evidence of the existence or non-existence of the debt and of the understanding of the party making it at the time it was made, and is proper evidence to be weighed by the trier of the fact for that purpose; but the debt always precedes the charge and must exist before it is made, and the omission to charge will not extinguish it, nor will a mistaken charge affect it, only as the fact bears as a piece of evidence upon the fact of whether a debt ever existed.

The objection of the defendant to a judgment for the plaintiff, because the services of the plaintiff were worthless, is not well taken; because, the auditor has found that they were reasonably worth ten dollars.

The fifth reason stated by the defendant why the judgment below should have been for him presents a question involving the attorney's right to detain the money of his client as security for the payment of his fees. The relation of attorney and client is one of trust and confidence, and requires the utmost good faith and fair dealing on the part of the attorney. *Cox* v. *Sullivan,* 7 Ga. 144, (50 Am. Dec. 386). When the attorney

has so conducted himself in the transaction of his client's business, he becomes entitled to his fees, and may hold the papers and money of his client coming to his possession in the performance of that business, as security for the payment of his fees; but, if he so conducts his client's business that his services become of no value to him, he cannot recover for such services. *Nixon* v. *Phelps,* 29 Vt. 198; *Hopping* v. *Quinn,* 12 Wend. 517; *Hill* v. *Featherstonebough,* 7 Bing. 569. Some of the authorities go farther and hold that, if the attorney detains the money of the client in bad faith and not honestly as security for the payment of his fees, in consequence of which the client is compelled to resort to a suit against him to recover the money so collected, the attorney will not be allowed anything for his services in making the collection, although of some benefit to the client. Such is the case of *Bredin* v. *Kingland,* 4 Watts. (Pa.) 420, and several other cases from that State to which this rule seems to be very nearly confined. In Massachusetts the rule seems to be that in a suit by the client to recover money so detained, the attorney will be allowed a reasonable compensation for his services, to be deducted from the sum collected. *Soper* v. *Manning,* 147 Mass. 126, (16 N. E. Rep. 752). In *Burns* v. *Allen,* 15 R. I. 32, (2 Am. St. Rep. 844), 23 Atl. 35, it is held, that where the case presents simply a difference of opinion as to the fair amount of fees to which the attorney is entitled, the attorney will be allowed a reasonable compensation, although he retained the whole sum collected as security for his pay. Some courts hold that, if the attorney sues for his fees, the client's remedy for a wrongful detention of papers or money held by the attorney under a claim that he is doing so in the exercise of his right of lien, is by way of recoupment of the damages which the client has sustained in consequence of such detention, leaving the punishment of the attorney for such wrongful detention with the court to be enforced by disbarment proceedings, instead of taking away his right to recover from the client a reasonable compensation for the benefit received by the client on account of the attorney's services. Without attempting to extract from these various cases, seemingly to be in conflict with each other in some respects, a reasonable rule upon which all can rest, but assuming, without deciding, that the law in this State is like the rule of the Pennsylvania courts, which deprives the attorney of all right to any compensation for his services, where he has,

in bad faith detained money collected for his client, we will examine the report and see if the plaintiff has been guilty of bad faith and unfair dealing in the detention of the defendant's money.

The report, as we have seen, fairly shows that on or about the 1st day of March, 1899, the collection of sixty-five or sixty-six dollars was made by the plaintiff after suit brought, of which forty or forty-one dollars went to the defendant, ten dollars to McConnell, the Fitchburg attorney, and fifteen dollars to the plaintiff. No complaint is made by the defendant concerning the ten dollars retained by McConnell as his fees, and the auditor has found that ten dollars of the fifteen sent to the plaintiff by McConnell, was reasonably due him from the defendant for services rendered in making that collection. No question can be raised, in the light of the above authorities but that the plaintiff had the right to retain enough of the collection, in the first instance, to secure the payment of what was reasonably due him for his services in making the collection; but the defendant claims that when the plaintiff agreed to take five dollars for his services there was an accord and satisfaction of his demand against the defendant and that thereafter he held the ten dollars, which he had promised to pay to the defendant as soon as he could, as the original money collected, and hence held it in bad faith and without right. The report, however, does not show that it was an accord and satisfaction of the plaintiff's demand. At most it was only an accord without satisfaction, a promise without consideration. Being an accord simply, neither party was bound by it; *Welch* v. *Miller*, 70 Vt. 108, 39 Atl. 749; *Cutler* v. *Smith*, 43 Vt. 577; *Rising* v. *Cummings*, 47 Vt. 345; besides the defendant himself has repudiated it, and has since demanded and received full pay for the whole amount collected; and when so demanded and paid the matter thereafter stood the same as before the agreement. In these circumstances the plaintiff's right to hold the money as security remained unchanged and existed as in the first instance, and he was justified in holding it. The defendant's attorney argued that the charge of fifteen dollars was excessive, and was so made with the purpose of retaining more of the defendant's money than he had a right to hold as security for what was really due him, and therefore he was guilty of bad faith. We do not think the case shows bad faith because the plaintiff claimed fifteen dollars for

his services, although that was five dollars more than the auditor has found due him. No agreement having been made in advance as to how much the plaintiff was to receive for his services, the law fixed the amount at a reasonable sum. What that sum was, the plaintiff could not fix definitely, and the most he could do, in the exercise of good faith towards his client, was to fix it at what he thought was reasonable. An honest mistake in fixing the amount, and the detention of a slight sum in excess of what was ultimately found due him, would not amount to a detention of the defendant's money in bad faith so as to prevent the plaintiff's recovery of his reasonable fees, even under the Pennsylvania rule. From what the report shows the plaintiff did about this collection, we cannot say as a matter of law, that his charge of five dollars more than the auditor has found reasonably due him, shows unfaithfulness to his client and intentional dishonesty. Nor do we think the fact that this matter ran along as it did, shows it. Either party could have instituted proceedings to have terminated this dispute and the omission to do so is chargeable to one party as much as to the other. What was said and done in June following the collection, about the charge of the plaintiff, is not inconsistent with this view of the matter. The plaintiff then insisted, as he now insists, that his services were worth that sum, but the defendant insisted that they were not, and finally the plaintiff agreed with the defendant, that his charge should be five dollars, and that he would pay the defendant the ten dollars as soon as he could. This agreement or offer to settle is not shown by the report to be anything more than a manifestation of a disposition on the part of the plaintiff finally to dispose of the matter, without regard to his existing rights, by charging the defendant five dollars and giving him credit for the fifteen dollars which he had collected, supplemented by the plaintiff's promise to pay the balance as soon as he could. That such was the purpose of the plaintiff is quite apparent from the fact that he offered to settle for less than the auditor has found due him. Neither is his final offer to pay Mr. Davis his check for ten dollars, inconsistent with good faith in the detention of the money and his claim that his services were worth fifteen dollars. It simply showed a willingness to abide by his former offer.

No bad faith being imputable to the plaintiff on account of his claim that the defendant reasonably owed him fifteen dollars

for the services which he had rendered in that collection, his detention of enough of the money collected to secure the payment of the sum claimed, does not defeat his right to recover what was reasonably due him, even under the Pennsylvania rule.

The auditor submitted to the court below, the question of whether the plaintiff could recover more than five dollars because of his offer to take that sum for his services at the time of his talk with the defendant in June following the collection. We do not think that question is before us. The report shows, as we have already said, that the offer as made by the plaintiff was repudiated by the defendant, and he makes no claim for it in his brief, but therein also repudiates it.

The second point raised by the defendant is on an exception to the auditor's report. One of the exceptions to the report is to the exclusion of evidence tending to prove that the plaintiff had sued the defendant twice on this same matter, which was offered to show that the plaintiff had harassed the defendant. The offer did not show nor indicate when they were brought nor what became of them, nor how they bore upon any issue in the case. The evidence was properly excluded, as it was wholly immaterial.

The other exception was to the admission of a letter purporting to have been written by said McConnell. In the opening of the plaintiff's case, he testified without objection as to how much he had received from McConnell on the defendant's claim, and what McConnell's charge was. He then offered the letter which stated that McConnell had received twenty-five dollars, ten of which he kept and the remaining fifteen dollars he inclosed to the plaintiff. The letter was offered by the plaintiff to corroborate his testimony thus given, but upon the defendant's objection the same was excluded by the auditor. On cross-examination the defendant's attorney asked the plaintiff whether at a certain time he did not tell the defendant that McConnell had collected forty dollars instead of twenty-five, and had kept fifteen and sent twenty-five to him. The defendant testified that the plaintiff did tell him so. The plaintiff denied it, but admitted having had a talk with him in which he told the defendant as he had testified in direct, and that at that time he showed him the letter which had been excluded by the auditor. In rebuttal the plaintiff again offered the letter, not as proof of its contents, but as bearing upon the probability of whether he

would make such a statement in the face of a paper purporting to show that such a statement was false, and it was received for that purpose alone. The letter was properly received. It was unimportant whether the letter was written by McConnell or by somebody else. It was not received for the purpose of establishing the truth of its contents; but was received as evidence bearing upon the question of whether the plaintiff made the statement which the defendant testified he did.

*Judgment affirmed.*