IN RE WILLIAM R. ALDRICH.

November Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 12, 1913.

*Disbarment Proceedings—Champerty and Maintenance by Attorneys—Conclusions of Committee—Conclusiveness—Construction—Collections by Attorneys—Accounting—Excessive Charges—Grounds of Suspension.*

An agreement by an attorney to restrict his charges in certain suits about to be brought by him to one-half the recovery therein was not champertous, where he did not agree to, and did not, carry on the suits at his own expense.

The conclusions of a committee in a disbarment proceeding having the confidence of the court and the bar will ordinarily be accepted by the court; and so where the report of such committee negatived the impropriety of an agreement by the attorney for contingent fees in the particular circumstances, its conclusions will not be disturbed, although such agreements are in general to be condemned.

The taking of an assignment of one-half interest in a claim for personal injuries by an attorney "as security for his services" in the prosecution of a suit on the claim is not champertous.

Where a liability insurance company is interested as such in a claim for personal injuries, settlement thereof by it is not champertous.

In a disbarment proceeding, where it appeared that respondent talked with a minor who had a claim for personal injuries and gave an opinion that he had a good case against his employers, that respondent later undertook the prosecution of the claim, and took an assignment of one-half interest therein as security for his services, and the committee appointed to hear and report found that the presentment was not sustained unless the agreement was champertous, it will be assumed that the committee considered the question of solicitation and found the circumstances to have been such as to remove the objection that in general lies against the giving of unsolicited advice and assistance.

In a disbarment proceeding where respondent was charged with collecting money for a client and neglecting and refusing to pay it over, it appeared that he recovered a judgment of $29 before a justice of the peace for his client and the case was appealed to county court by the adverse party, where it was set for trial at the second term and settled during that term, respondent having express authority to settle as he deemed best; that a note was taken in settlement, which was subsequently paid, whereupon respondent sent his client a receipted bill for services, in which he charged term fees according to the schedule of fees of the county bar, leaving $3.50 for his client, those facts failed to show embezzlement of the client's money as charged in the presentment, and notwithstanding the belief of the committee that it was the practice of most attorneys in good standing to remit term fees in cases where the amount in controversy was so small, and its condemnation of respondent's charges of term fees, it cannot be said that in adhering to the schedule of the county bar in respect of term fees respondent was guilty of unprofessional conduct, though excessive charges cannot be justified by a rule of a bar association.

Where an attorney had for collection a claim against the son-in-law of his landlady, it was misconduct justifying the suspension of the attorney for him to make an arrangement with the landlady, without his client's consent, whereby he assumed the indebtedness to his client on the claim in consideration of credit for the same amount on rent due from him to the landlady, although the client subsequently ratified the transaction by treating the attorney as its debtor.

Where plaintiffs settled their suit directly with the defendant and paid their attorney for his services, it was misconduct in the attorney justifying suspension, for him, without ascertaining whether the settlement made provision for the costs already incurred, to attempt the collection of the costs from the defendant by taking a judgment by default and causing execution thereon to issue, even though the matter has subsequently been adjusted between the parties whose private interests were affected.

Where a complaint to the Supreme Court against an attorney was presented to the Chief Judge thereof, who, after certain correspondence between him and the parties, caused the papers to be placed in the files of the county court, in a subsequent disbarment proceeding against the attorney founded in part on the misconduct alleged in that complaint, the Supreme Court will take notice that the complaint was never in fact presented to it or brought to its attention.

In disbarment proceedings a court is not confined to determining merely whether the respondent should be disbarred, but should do whatever behooves it in the exercise of its jurisdiction over attorneys as officers of the court.

In a disbarment proceeding, where it appears that the respondent has been guilty of serious misconduct which, however, arose years ago, and that the parties whose private interests were affected have been long since satisfied, a judgment of disbarment would be too severe, and the respondent will be only suspended.

DISBARMENT proceedings, on complaint of the Attorney General. Heard at the November Term, 1912, of the Supreme Court for Orleans County, on the report of the committee appointed to hear the case.

*John G. Sargent,* Attorney General, and *W. M. Wright,* State's Attorney, for the State.

*Young & Young* and *F. D. Thompson* for the respondent.

HASELTON, J. This is a disbarment proceeding brought to this Court by the Attorney General. Answer was made, and a committee was appointed to hear and report upon the charges made. The committee's report having been made and filed, the

case came on to be heard at the November Term, 1912, of this Court.

Presentments one and two charge illegal and champertous undertakings and doings on the part of the respondent in respect to certain libel suits. It appears from the findings that a libelous petition affecting certain officers of the town of Lowell was put in circulation and that these officers employed the respondent, who was counsel for the town in some matters, to commence libel suits against some of the signers of the petition. The respondent did not agree to pay costs and expenses but agreed to restrict his charges for services to one-half of the amount that might be recovered. The respondent has, in fact, paid none of the expenses of the suits. The committee find and report that the first and second presentments are not sustained unless the agreement of the respondent with regard to these libel cases was champertous. It was not such an agreement, since the respondent was not to carry on the suits at his own expense. *Hamilton* v. *Grey*, 67 Vt. 233, 31 Atl. 315, 48 Am. St. Rep. 811; 4 Bl. Comm. 135; *Hadlock* v. *Brooks*, 178 Mass. 425, 59 N. E. 1009; *Phillips* v. *South Parks Commissioners*, 119 Ill. 626, 10 N. E. 230; *Peck* v. *Heurich*, 167 U. S 624, 630, 17 Sup. Ct. 927, 42 L. ed. 302; *McPherson* v. *Cox*, 96 U. S. 404, 24 L. ed. 746; *Gelo* v. *Pfister & Co.*, 132 Wis. 575, 113 N. W. 69; *Gould* v. *Brock*, 221 Pa. St. 38, 69 Atl. 1122; *Fenn* v. *McCarrell*, 208 Pa. 615, 57 Atl. 1108; Statute 33, Edw. 1, early note.

The note above referred to accurately defines champerty as it was understood at common law, though some elements of the definition were sometimes omitted. The note reads as follows: "Champertors be they that move pleas and suits, or cause (them) to be moved, either by their own procurement, or by others, and sue them at their proper costs to have part of the land in variance, or part of the gains." Statutes at Large, Runnington's Ruffhead's Edition, Vol. 1, p. 150.

Though not a part of the text of the statute, this early note, or comment or gloss has often been treated as a statutory definition, notably by Blackstone in his Commentaries, by Lilly in his Abridgment, and by Baron Comyns in his Digest.

The report of the committee negatives the impropriety of the agreement for contingent fees in the particular circumstances, and while such agreements are in general to be con-

demned, we do not feel called upon to discuss the matter, for the conclusions of a committee having, as this does, the confidence of the Court and of the bar will ordinarily be accepted. *In re Jones,* 70 Vt. 71, 83, 86, 39 Atl. 1087.

The third presentment is not sustained by the findings and is not argued by the Attorney General who conceded before the committee that he was misinformed about the matter thereof when the petition was brought.

Under presentment number four the following facts appear: In July, 1910, one Wallace Dunn, a minor, lost a finger while employed about a machine where he was at work. Some time during the following month the respondent talked with young Dunn about the matter and in substance gave an opinion that the boy had a good case against his employers. The result was that a little later the respondent undertook the prosecution of the claim and "as security for his services" took from Dunn an assignment of a one-half interest in the claim and in the proceeds thereof. At this time the respondent did not know that Dunn was a minor. Upon learning of this fact he took steps which resulted in the appointment of a guardian for Dunn, and he then took steps which resulted in the settlement of the claim by a liability insurance company, interested as such, which paid four hundred dollars to adjust the matter. Out of this the respondent was paid one hundred dollars. The committee find that the respondent's charges were reasonable, and that the fourth presentment is not sustained unless the agreement, above referred to, taken by way of security, was a champertous agreement. The transaction was not champertous on the part of the respondent nor on the part of the insurance company. *Tapley* v. *Coffin,* 12 Gray, 420; *Blaisdell* v. *Ahern,* 144 Mass. 393, 11 N. E. 681, 59 Am. Rep. 99; *Gould* v. *Brock,* 221 Pa. 38, 69 Atl. 1122. See also the cases referred to in the discussion of presentments one and two.

The counsel for the State say that the finding under the fourth presentment raises the question of whether there was not in this instance an unprofessional solicitation of business, but in submitting to the court only the question of whether the agreement for security was, or was not, champertous, the committee must be treated as having considered the question of solicitation and found such relations to exist between the re-

spondent and the boy, who was ignorant of his rights, as to remove the objection which in general lies against the giving of unsolicited advice and assistance.

The fifth presentment is not sustained by the findings and is not argued on the part of the State.

Presentment number six charges the respondent with collecting money for one Grant and neglecting and refusing to pay it over to his client. Grant had a claim against a Mrs. Curtis for twenty-nine dollars. This he had the respondent bring suit upon in the court of a justice of the peace. There a trial was had and judgment was recovered for the twenty-nine dollars and costs. For his services on this trial the respondent was paid five dollars. However, the demand was large enough to make the case appealable and Mrs. Curtis took an appeal to the county court, where the case was for two years. At the second term the case was set for trial and during the term it was settled, the respondent having express authority to settle the case as he deemed best. A note was taken for the agreed amount. Later a renewal note was taken for a part of the amount. When the renewal note was paid the respondent sent to his client a receipted bill for services and three dollars and a half in money, the charges and the remittance making up the amount which the respondent had received in settlement. In making up his bill in this case the respondent charged term fees according to the schedule of fees in Orleans County, the county where the suit had been pending, a schedule which in the respect complained of probably conforms substantially to that which has been adopted in other counties. The committee think that, since the matter in controversy was so small, the term fees should have been remitted or discounted. They express their belief that it is the universal practice of attorneys in good standing to remit or discount term fees in cases of the class to which this belonged, and they condemn the respondent's charges of term fees in this case. In the brief for the State it is said that the question raised by the finding under the presentment "is simply whether or not Mr. Aldrich charged too much for his services." The gist of the presentment is the embezzlement of the client's money, and it is not sustained by the finding; nor can we say that in adhering to the rule of the Orleans County Bar in respect to term fees the respondent was guilty of un-

professional conduct, though, of course, excessive charges cannot be justified by a rule of a bar association. In respect to the retention of fees out of the amount collected, see *Davis* v. *Farwell*, 80 Vt. 166, 67 Atl. 129. Nothing unprofessional appears in that regard.

The finding under presentment number seven is that one Badger employed the respondent in the matter of a claim growing out of depredations upon Badger's garden by certain boys. The respondent rendered substantial services in pursuance of his employment and charged therefor three dollars. The committee find nothing wrong about this, and the State makes no claim in regard to it.

The material facts relative to the eighth presentment are as follows: In 1902, or 1903, E. Lane & Son, partners in business, put into the respondent's hands a claim against one Pliny Miller, a person of little or no financial responsibility. The respondent from time to time secured small payments on the claim until it was reduced to sixty dollars. In 1906, the respondent was a tenant of Miller's mother-in-law, and was owing her for rent. In March of that year he made an arrangement with his landlady whereby he assumed Miller's indebtedness to Lane & Son and she credited him for the like amount on his dues for rent. Lane & Son had given him no authority to make this arrangement, and they did not learn of it from him but from Miller about a year and a half after the transaction, when the latter exhibited a receipt showing payment of the claim against him. After learning of the transaction Lane & Son demanded of the respondent payment of the bill which he had assumed and upon his failure to pay, they after the lapse of some months, brought suit against the respondent and obtained judgment thereon. The respondent appealed the case to the county court, and at the September Term, 1908, the suit was settled by payment of the claim in full with costs. Before the committee the respondent claimed that his delay in meeting the obligation to Lane & Son was due to his inability to do so and that he had no other intention than to make proper settlement with Lane & Son. The committee do not report whether or not this claim was sustained. But whether or not it was, the respondent had no right to use the client's claim, however worthless, to pay his own debts without authority from the client, and

though Lane & Son after learning of the transaction appear to have ratified it by treating the respondent, and not Miller, as their debtor, their course cannot and does not operate as a justification of the respondent in this proceeding.

The ninth, and last, presentment is a narrative relative to two justice suits brought in 1901. It appears from the report of the committee that in November of that year two young women, Alice Jenkins and Sadie McMurray, bought some furs of Gilman & Company, a firm doing business at Newport. For her purchase Miss Jenkins paid fifteen dollars. Miss McMurray paid ten dollars for hers. The young women became dissatisfied with their purchases and requested Gilman & Company to take the furs back and to refund the purchase money. Their request being refused they consulted the respondent who, as their attorney, wrote a letter to Gilman & Company, and afterwards brought two suits in the matter before a justice of the peace, one in favor of Miss McMurray returnable December 5, 1901, and one in favor of Miss Jenkins returnable December 11, 1901. After the writs had been served the plaintiffs settled directly with the defendant company, each plaintiff agreeing also to withdraw her suit and to pay all costs herself. Thereafter both plaintiffs called on the respondent and notified him that they had settled with Gilman & Company and wanted to pay him for his services. He charged each three dollars, which was paid. Nothing was said specifically about a settlement of the "suits," or about the costs of suit in the cases. On the return day of Miss McMurray's suit, the respondent, as her attorney, took judgment by default in her favor for nominal damages, one cent, and costs amounting to five dollars. On the same day, but after judgment, an attorney for Gilman & Company informed the respondent that his clients had made a settlement with Gilman & Company, and later in the day the respondent received a written notice from his clients specifically notifying him that "the suits" had been settled, and directing him to proceed no further with either of them. Before this notice was received the respondent had taken out execution on the judgment procured, and had mailed it to a constable. Two days after its issue one of the partners of the defendant firm, G. H. Flint, drew up a complaint to this Court, complaining of the conduct of the respondent in the matters referred to, and

asking this Court to take such action in the premises as it might deem proper. This complaint was put into the hands of the late Chief Judge Taft. Shortly after, Mr. Flint wrote the Chief Judge a letter saying, in substance, that he had gone over the matter with Mr. Aldrich, that the complainant took a changed view of the matter; and he asked to withdraw his complaint. After Mr. Flint's complaint, and before the letter of withdrawal, the respondent himself wrote the Chief Judge saying, among other things, that he had no intention of doing any act that would bring discredit upon his profession. After receiving the communications referred to, the papers relating to the matter under consideration were enclosed in an envelope on which the Chief Judge endorsed "In Re William R. Aldrich, complaint, etc." There was a further endorsement indicating that the papers were to be placed in the files of the clerk of Orleans County, and they were so placed. The complaint of Mr. Flint was never, in fact, presented to this Court, a matter of which we take notice, and the subject matter thereof was not brought to the attention of this Court until it was presented in this proceeding, after the lapse of some ten years. The committee in closing their report say: "We are unable to determine from this presentment, what specific charge, if any, is made against the respondent and therefore we indicate no finding as to whether the presentment is or is not sustained." However, they say that the respondent's conduct in the suits in question is open to criticism in that he sought to impose upon Gilman & Company costs of suit, after being advised of some kind of a settlement, without taking any steps to ascertain whether or not the settlement made provision for the costs already incurred. In saying this we think that the committee state the gist of the presentment, and we think that the committee's animadversions upon the conduct of the respondent in that regard are just.

The matters covered by the findings under the two last presentments, the eighth and ninth, call for serious consideration. In disbarment proceedings a court is not confined to answering the question whether or not the respondent should be disbarred, but is at liberty to do, and should do, whatever behooves it in the exercise of its jurisdiction over attorneys as officers of the Court. Here the matters of serious import arose years ago, and

the parties whose private interests are, or were, affected were long since satisfied, and in all the circumstances a judgment of disbarment would be immoderate. But the respondent cannot be exonerated, and merely to express disapproval, or censure, would be to treat lightly matters vitally affecting the integrity of the profession and the interests of society.

*Upon careful consideration of the whole case we are satisfied that a just and salutary result will be reached by a judgment of suspension from the practice of the law in the courts of this State for a period of one year, and judgment of suspension is rendered accordingly.*