Schiefelbein vs. The Badger Paper Co.

SCHIEFELBEIN, Appellant, vs. THE BADGER PAPER COMPANY, Respondent.

*November 26 — December 16, 1898.*

*Master and servant: Negligence: Court and jury.*

> In an action for the loss of plaintiff's fingers caused by a fan revolving at a high rate of speed within a drum in defendant's paper mill, the evidence showed that the plaintiff was nearly eighteen years old and had worked in paper mills for about two years, and in this mill over two and one-half months; that while at work cleaning a screen at the bottom of a hopper through which pulp was fed by suction, having done like work before and knowing that the fan was in operation, he in some way got his hand into an opening in such drum, which he might have seen if he had looked, and which was several feet above the screen, the drum being wholly disconnected with his work and not in the slightest degree dangerous to him while performing the same, and had two fingers cut off by the fan. *Held* that, whether or not the opening in the drum was protected, negligence on the part of the defendant was not established, and a nonsuit was properly granted.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

At the time the plaintiff sustained the injuries complained of, he was a minor, between seventeen and eighteen years of age. He was employed to work in defendant's paper mill, and lost a portion of two of his fingers by getting them into a fan, located near where he was set to work. This fan revolved in a drum or cylinder, on the top of which was an opening, usually covered by wire netting. On the day of the accident it is claimed that this netting was out of repair. Plaintiff rested his hand on the top of the drum, not observing that the hole in the top was unprotected, got his fingers into the fan, and was injured. Defendant's negligence is alleged to consist in the failure to keep the cover over the drum in repair, and in neglecting to warn plaintiff of the danger. After plaintiff's testimony was in,

the court directed a nonsuit. From the judgment dismissing the action this appeal is taken.

For the appellant there was a brief by *Wigman & Martin*, and oral argument by *P. H. Martin*. They contended, *inter alia*, that as to the plaintiff the danger was latent. He had no experience that would or did suggest to his mind that there was or should be an opening in the drum. The issues should have been submitted to the jury. *Jones v. Florence M. Co.* 66 Wis. 268; *Neilon v. Marinette & M. P. Co.* 75 id. 579; *Nadau v. White River L. Co.* 76 id. 120; *Chopin v. Badger P. Co.* 83 id. 192; *Thompson v. Johnston Bros. Co.* 86 id. 576; *Luebke v. Berlin M. Works,* 88 id. 442; *Kucera v. Merrill L. Co.* 91 id. 637; *Wolski v. Knapp-Stout & Co. Company,* 90 id. 178; *Thompson v. Edward P. Allis Co.* 89 id. 523; *Klatt v. N. C. Foster L. Co.* 92 id. 622.

For the respondent there was a brief by *Nash & Nash,* and oral argument by *L. J. Nash* and *John T. Fish.*

BARDEEN, J. In defendant's paper mill was a machine used for the manufacture of paper. At one end of this machine was a hopper four or five feet wide, a little longer than it was wide, into which the pulp mixed with water flowed. This hopper was built upon an iron frame, four or five feet from the floor of the mill. Its sides were perpendicular. In the bottom of the hopper was a screen, through which the pulp and water was forced by suction. On one side of the hopper was located a drum or cylinder made of iron, about fifteen inches in diameter, containing a fan, which revolved at great speed. Extending from the side of the drum was a short shaft, to which was attached a small pulley, which was belted to a large pulley on the driving shaft above. The ends of the drum curved downward, and were connected with the bottom of the hopper by sheet-iron pipes. The drum extended two or three feet above the top of the hopper, and the side nearest the hopper was a foot or

more distant. In the top of the drum was an opening four or five inches wide and about nine inches long, apparently for the purpose of allowing the air sucked from below to escape. Over the top of this opening, there was usually kept a wire netting, to prevent things from getting or coming in contact with the fan within. The fan revolved with great rapidity, and made considerable noise, that sounded like a steady roar. While the paper machine was in operation, the pulp flowing into the hopper would sometimes clog the screen, so that it became necessary to scrape it. This was done by the operator standing on a bench beside the machine, using a wooden scraper, and was done as often as once every half hour. At times the screen would become so clogged that it became necessary to turn off the pulp, and the screen would then be cleaned by an operation called "spatting." The "spatter" consisted of a piece of wood about a foot long, to which was nailed a piece of belting about eight inches in length. The workman would step up into the hopper, and, standing on the screen, would strike it with this spatter, and thus clean the screen of the pieces of pulp that had adhered to it.

The plaintiff was injured on August 30, 1893. He had been at work in this mill about two and one-half months, and had had about two years' experience in paper mills altogether. He was employed by defendant as cutter boy about the paper machine, and at different times had scraped the screen, and two or three times previous to the accident had performed the operation of "spatting." On the day of the accident, he was directed to spat the screen in question. It was about 10 o'clock in the forenoon. His relation of the accident is as follows: "At the time I lost these fingers, we were changing paper, and we washed up. We had to wash the screens, and in this place I could not reach the further end of the screens; so I was compelled to get in it, and had a spat, which is made of a piece of rubber belt-

ing or belt about three, four, or six inches wide, and about a foot long. It is used for spatting the screen,— the material that settles in the screen,— wash it out, in order to have better paper in the screen, for the better working of the screen. *While I was engaged, I was near the side where the fan was; and during the spatting, some way or other, I had my hand upon the screen. Whether I stopped spatting, or to rest on these, or what position I had, I don't know, because after the accident I do not exactly remember whether I was resting on these, or whether I was standing up straight in resting; and, just the moment I got up, my fingers were gone. Then I did not pay any more attention to the screen. I got my fingers in the fan."* He testified, further, that he did not know of the opening in the drum, did not know whether the shaft revolved anything inside of the drum, and had not been warned of any danger. Upon this testimony the court granted a nonsuit, and the question before us is whether, under all the circumstances, the case should have been submitted to the jury.

We feel very clear that the ruling of the trial court must be sustained. The case is barren of any proof of whether the opening on the top of the drum was covered or not at the time of the accident. The plaintiff testified that, on September 15th following the accident, he examined the drum, and found that there was a hole in the wire netting where it had sagged down against the fan. This does not establish the fact that there was no netting there at the time of the accident. But, whether the opening in the drum was covered or not, we are of opinion that the conditions shown do not establish a case of negligence within the rule laid down by the authorities. The hole in the drum was some three feet above the screen. The drum itself was wholly outside of the hopper, the nearest portion being a foot or more distant. It was wholly disconnected with the work plaintiff was called upon to perform, and was not in the

slightest degree dangerous to him while spatting the screen. True, it was near enough for him to reach and get his fingers into; but it was no part of his duty, nor necessary for the performance of his work, to have anything to do with the drum. Had the opening in the drum been covered with the netting, and he had rested his hand upon it, it is more than likely that the accident would have occurred just as it did. The pressure or weight against the rapidly revolving fan would have cut the netting in an instant. To entitle the plaintiff to a recovery, the injury must have resulted from some negligence of the defendant, which, in the light of all the attendant circumstances, it ought to have foreseen and guarded against. This is the rule approved in *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, and which has since been followed in a multitude of cases. It is a matter of grave doubt whether, under all the circumstances in this case, it could be said that the danger of an accident was so open and palpable that it ought to have been anticipated and foreseen by the defendant.

But there are other very potent considerations in this case. The plaintiff was a young man of average intelligence, nearly eighteen years of age, and in possession of all his faculties. He had worked in paper mills for about two years, and in this mill over two and one-half months. The shaft, pulleys, and drum were in plain sight. He had scraped the screen very many times, on the average of every half hour during the day when the machine was running. He knew the machinery was in motion. The scene of the accident was well lighted from adjacent windows. If he had used his eyes, he could not fail to have seen the opening in the top of the drum. The air that was sucked through the screen had to be expelled at some point, and it is a fair inference from the plaintiff's testimony, and from the pictures of the machine attached to the bill of exceptions, that it was forced out of this hole in the top of the drum. If such is the fact,

there could be no possible reason why plaintiff ought not to have known of this opening, if he could not see it. It is quite incomprehensible how, if he had looked, he could not have seen it. Under any view of the case, we feel quite certain that defendant's legal liability was not established, and that the nonsuit was right.

This case is quite distinguishable from *Nadau v. White River L. Co.* 76 Wis. 120, and the other cases cited by plaintiff. There was nothing hidden or secret in the alleged defect. It constituted no menace to him while in the discharge of his duties. It only became such by his reaching over the side of the hopper, and using it as a rest. The defendant had a right to assume that he was a person of ordinary common sense for one of his years, and that he would exercise such care to avoid dangers which were visible, and which he knew, or ought to have known, existed, as might reasonably be expected of one of his years and capacity. *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615. The proof shows that he did not come up to this expectation.

*By the Court.*— The judgment of the circuit court is affirmed.