GROTH, by guardian *ad litem,* Respondent, vs. THOMANN and another, Appellants.

*April 30 — May 21, 1901.*

*Master and servant: Negligence: Personal injuries: Dangerous machinery: Failure to instruct or warn: Presumptions: Evidence: Material error: Special verdict: Court and jury.*

1. Where an intelligent girl over fifteen years of age was injured by having her hand caught between the roller and steam jacket of a mangle, she must be presumed to know that, if she gets her fingers caught between a roll turning inwardly from her and a surface against which it runs in contact, she will be injured. Testimony to the contrary does not raise a question for the jury, and it is material error not to recognize and act upon such presumption.

2. In such case where the servant testified she knew how to do her work, and that she was doing it in precisely the right way prior to the injury, with full knowledge that if she allowed her fingers to be caught in the mangle a serious injury to her would probably result, it is error to submit, as part of a special verdict, questions

in respect to failure on the part of the master to instruct her as to the proper manner of doing her work.

3. The duty to instruct, as between master and servant, does not exist as to dangers which are so obvious that the servant must be *held*, as a matter of law, to be as familiar with them as the master.

4. Where a mangle had no discoverable defect, and was shown to have run evenly ever before and ever after the time the servant was injured, and the mechanical connections between the mangle and the motor were such that any unsteady motion was practically impossible, testimony by the servant that the injury was caused by the unsteady motion thereof is so contrary to all reasonable probabilities as not to raise a conflict of reasonable inferences for solution by the jury.

5. It is for the court to determine the effect and weight of the testimony and evidence, and where the physical situations or matters of common knowledge, based on reason and common sense, point so certainly to the truth as to leave no room for a contrary determination, the mere fact that sworn testimony is produced in court to establish a contrary conclusion, even though not disputed by other sworn testimony, does not warrant the submission of the question to the jury.

6. In actions to recover compensation for injuries on the ground of negligence, it is absolutely essential to such recovery to establish not only the breach of duty on the part of the defendant as regards the personal safety of the plaintiff, but that such breach was the proximate cause of the injury complained of, and in such actions a special verdict which contains no finding on the subject of proximate cause is fatally defective.

7. Where in an action for injury to a servant by reason of a defect in a machine the undisputed evidence relieved the master, in the absence of actual knowledge of the defect, from any charge of negligence in not knowing thereof, and the jury found, as part of a special verdict, that the master did not have such knowledge, such finding exonerated the master from all fault, and judgment should have been rendered in his favor.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T WILLIAMS, Judge. *Reversed.*

Action to recover compensation for personal injuries received by plaintiff, a girl about fifteen years of age, caused by her hand being crushed and burned in an ironing device called a mangle, used in a steam laundry. The negligence

complained of was failure to instruct plaintiff how to feed the cloth into the mangle, and want of repair of the machine, causing it to run with an unsteady motion, the roller some-times nearly stopping and then suddenly starting to run fast, so that, as it so started, the hands of the operator being on the clothes pushing them into the rolls, it had a tendency to draw her hands into the region of danger before she could act to prevent it. The answer put in issue the allegations of negligence and raised the question of whether plaintiff was guilty of contributory negligence.

The evidence was to the following effect: The mangle was a machine about four feet high, measuring from the floor to the top thereof. There was a roller, about eleven feet long and eighteen inches in diameter, which revolved at a speed of from six to twenty revolutions per minute. There was a steam jacket, adjusted so as to be nearly in contact with the roller when it was in operation. The cloth was fed in between the roller and the jacket, the edge of the article to be ironed being first placed in position on the upper side of the jacket and then pressed upward and into the roller by the operator placing the palms of her hands flat upon it as it so lay upon the jacket, with the ends of her fingers raised to avoid danger of having them caught by the roller. There was a governor on the engine and the connections between the motor and the ironing machine were such as to render any considerable unsteady motion of the mangle roll practically impossible. Plaintiff had worked out for wages some two years before she was injured. She had worked around and attended the ironing machine in question about ten days before such injury. The proper way to feed the clothes into the mangle was the way plaintiff said she was doing the work. She testi-fied that she was not instructed how to do her work, but knew from the start that she must be careful not to allow her fingers to be caught by the mangle; that she had seen

others feed the clothes in and did her work the same as they did; that her hand was caught solely by reason of the unsteady motion of the mangle roll; that it had never run that way before about one hour prior to the injury; that she had both her hands in the same position, pushing cloth into the roller, and was looking right at them at the time her left hand was caught; that the only way she could account for the accident was the sudden starting of the roller to go fast. No unsteady motion of the mangle roller had been observed by any of the other employees, of whom there were several who were in a situation to have observed the difficulty if it existed before the accident; nor was any such unsteady motion ever observed afterwards, nor was there any discoverable defect in the mangle or any of its connections to account for any unsteady movement thereof.

There was a motion for a nonsuit at the close of plaintiff's case, and also at the close of the evidence upon both sides. Both motions were denied and due exceptions were taken to the rulings. There was also a motion for the direction of a verdict in favor of defendants, which was denied, and due exception was taken to the ruling. The cause was then submitted to the jury for a special verdict with the following result:

"(1) Was the plaintiff injured on the 23d day of July, 1898, at the place of business of the defendants by having her fingers caught in a steam mangle, between the cylinder and the steam jacket. *A.* (*By the court, by consent of counsel*) Yes.

"(2) What was the age of the plaintiff at the time she was injured? *A.* (*By the court, by consent of counsel*) Fifteen years and six months.

"(3) Did the defendants, or their foreman, know the plaintiff's age prior to her injury? *A.* No.

"(4) Did the plaintiff inform the defendants, or their foreman, prior to her injury, that she had worked in a laundry before and knew how to run such a mangle? *A.* No.

"(5) Was the plaintiff, prior to her injury, sufficiently in-

formed as to the proper manner in which her work at the mangle should be done? *A.* No.

"(6) Was the plaintiff at the time of her injury of such age, experience, knowledge, and capacity that she ought to have comprehended and understood the dangers which were incident to her employment at the mangle in question? *A.* No.

"(7) Was the plaintiff, prior to her injury, warned by the defendants, or their foreman, to keep her fingers out of the place where the towels and and other materials were fed into the mangle? *A.* No.

"(8) Was the plaintiff, at the time the accident happened, using such care and attention in the performance of the work she was engaged in as ordinarily prudent and careful persons of the same age, understanding, and experience would have used? *A.* Yes.

"(9) At the time when the plaintiff was injured was she doing her work in such a careless manner that her carelessness contributed directly to her injury? *A.* No.

"(10) Ought the defendants, in the exercise of ordinary care, to have known from the apparent age, experience, intelligence, and capacity of the plaintiff that she was incapable of comprehending such dangers as were incident to her employment at the machine in question? *A.* Yes.

"(11) Did the steam mangle in question, at or prior to the accident and while the plaintiff was working at the machine, run in a jerky, uneven and unsteady manner? *A.* Yes.

"(12) If you answer the eleventh question yes, did the plaintiff know prior to her injury that the mangle frequently ran in such uneven, jerky and unsteady manner? *A.* Yes.

"(13) If you answer the eleventh question yes, did the defendants or their foreman, prior to the time of the plaintiff's injury, know that the mangle frequently ran in such uneven, jerky, and unsteady manner? *A.* No.

"(14) At the time of the plaintiff's injury, at how many revolutions per minute was the cylinder of the mangle revolving? *A.* No evidence given whereon to base an answer.

"(15) If the court should be of the opinion that the plaintiff is entitled to recover in this action, at what sum do you assess her damages? *A.* Two thousand five hundred and eighty dollars ($2,580)."

Defendants' counsel moved for judgment upon the verdict, also for judgment notwithstanding the verdict, also for an

order setting the verdict aside and for a new trial, all of
which motions were denied and due exceptions taken to the
rulings.    Judgment was rendered in plaintiff's favor upon
the verdict for the damages as assessed by the jury.    There
were exceptions to rulings on requests to submit special ques-
tions, made by counsel for defendants, and also to refusals
to charge as requested by them.

*Joseph B. Doe*, for the appellants.

For the respondent the cause was submitted on the brief
of *Christian Doerfler*, attorney, and *McElroy & Eschweiler*,
of counsel.

MARSHALL, J.   The trial of this case seems to have pro-
ceeded to the final result appealed from either from forget-
fulness or misconception of some plain principles of the law
of negligence or of the evidence in the case, or a combina-
tion of both.    Upon the theory that the allegations in respect
to failure on the part of appellants to instruct respondent as
to the proper manner of doing her work at the mangle were
material in view of the evidence, a number of questions on
that subject were submitted to the jury.    They were imma-
terial for three reasons:   First, a girl of ordinary intelligence,
of the age of respondent when she was injured, must be pre-
sumed to know that if she gets her fingers caught between
rolls turning inwardly from her, or between a roll turning
that way and a surface against which it runs in contact, she
will be injured; and testimony to the contrary does not
raise a question for a jury.    Second, respondent knew how
to do her work, and was, according to her own evidence,
doing it in precisely the right way prior to her injury and
with full knowledge that if she allowed her fingers to be
caught in the mangle roll a serious injury to her would prob-
ably result.    Her testimony is very positive on that.    Third,
duty to instruct, as between master and servant, does not
exist as to dangers which are so obvious that the servant

must be held as a matter of law to be as familiar with them as the master. The principles referred to are elementary, and have been as often applied in this and other courts as the facts have been presented warranting it. *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615; *Schiefelbein v. Badger P. Co.* 101 Wis. 402; *Bigelow v. Danielson*, 102 Wis. 470; *Nugent v. Kauffman M. Co.* 131 Mo. 241; *Jones v. Roberts*, 57 Ill. App. 56; *Connolly v. Eldredge*, 160 Mass. 566; *Coullard v. Tecumseh Mills*, 151 Mass. 85; *Crowley v. Pacific Mills*, 148 Mass. 228; *Pratt v. Prouty*, 153 Mass. 333; *De Souza v. Stafford Mills*, 155 Mass. 476.

Why the claim of negligence because of failure to instruct respondent as to the proper method of doing her work was submitted to the jury is not perceived, consistent with a reasonable knowledge of the situation as the record presents it. It must be presumed that it was known at the time of such submission that the law is well settled that a person of average intelligence, of the age of fifteen years, must be presumed to know that it is dangerous to allow the hand to be caught by revolving rolls, and that evidence from the mouth of a witness to the contrary does not reasonably rebut such presumption so as to take the question, in regard to where the truth lies, to the jury; and further, that it is plain judicial error not to recognize and act upon such presumption. Further, we must assume that so plain a principle of law as that there is no duty to instruct, as between master and servant,, where there is no need for instructions, was not unknown; and above all, since it was clearly shown that respondent was accustomed to feed the mangle in the very way she would have been instructed to do it if instructions were needed and given, that she understood fully the object and the reason thereof and that it was dangerous to allow her fingers to be caught by the rolls, we must presume that the learned trial court, by inattention to the trial or for some other reason, did not understand the evidence when the va-

rious rulings in the case were made, where the subject of her knowledge and need of instruction was involved. The principles that govern this matter are so plain that we do not feel justified in saying more about them at this time, or their application to this case.

We have left, as the only matter covered by the verdict upon which, in any event, a recovery in plaintiff's favor could be justified, the finding that the mangle ran in an unsteady manner. We are unable to find any evidence in the record to support that finding except the evidence of respondent, who testified that the machine commenced to go wrong about one hour before she was injured and that such difficulty was what caused the injury. In view of the undisputed evidence that there was no discoverable defect in the mangle, that it ran evenly ever before and ever after the time in question, and that the connections between the machine and the motor from which the power was received were such that any such unsteady motion as claimed was practically impossible, we must say respondent's evidence was contrary to all reasonable probabilities and did not raise a conflict of reasonable inferences for solution by the jury. Such has been the uniform holding of courts under similar circumstances, and no other would be consistent with reason and common sense. *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277; *Badger v. Janesville C. Mills*, 95 Wis. 599; *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352; *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382; *Bigelow v. Danielson*, 102 Wis. 470; *Dingley v. Star K. Co.* 134 N. Y. 552.

No one thing would be more helpful in the right administration of justice than a comprehension and application of the foundation principles upon which facts must be established by evidence. The mere fact that sworn testimony is produced in court to establish a fact, even though not disputed by other sworn testimony, does not warrant even the submission of the question involved to the jury. It is the

effect of the testimony or evidence, the weight of it, that must solve the initial question of whether there is a conflict of reasonable inferences calling for solution by a jury. That question is always for the court to determine, and a failure to discharge the judicial function in that regard with firmness and care means a weakening of the system upon which parties must depend for a just and certain determination between right and wrong. Courts must decide whether evidence, in any reasonable view of it, will admit of conflicting reasonable inferences, and in legal actions juries must decide between such inferences. When physical situations or matters of common knowledge point so certainly to the truth as to leave no room for a contrary determination, based on reason and common sense, such physical situation and reasonable probabilities are not affected by sworn testimony which, in mere words, conflicts therewith. The fact established by the situation itself and matters of common knowledge, so clearly that no one can reasonably dispute it notwithstanding evidence to the contrary, must stand uncontroverted and uncontrovertible, condemning as false such contrary evidence, either upon the ground of mistake or something worse. Under that rule there was nothing to submit to the jury in this case, on the question of whether the mangle ran unevenly or not.

There is a further fatal defect in the verdict in that there is no finding on the subject of proximate cause. It seems a work of supererogation at this time to point out and discuss the necessity for such a finding in a case like this, where the fact involved is clearly not established by the undisputed evidence. When a person seeks to recover compensation of another for injuries on the ground of negligence, it is absolutely essential to such recovery to establish, not only a breach of duty on the part of the latter as regards the personal safety of the former, but that such breach was the proximate cause of the injury complained

of. There is no exception to that rule. It is a part of the very A, B, C's of the law of negligence. All courts must recognize and test the right to recover in every negligence case by it. The necessity for the finding, the nature of the subject involved, the proper way of submitting and explaining it to the jury, are so clearly pointed out in the books, and are so involved in the very philosophy, so to speak, of the law of negligence, that a mistake in regard to the matter is hard to justify. *Sheridan v. Bigelow*, 93 Wis. 426. If it were not for such situations as we have here, we should certainly consider it wholly unnecessary to suggest that the mere fact that a person receives a personal injury at the hands of another, directly or indirectly, does not give such person a legal right to compensation for his damages from such other; that there is no legal liability in such a case unless a distinct breach of duty by such other is shown, and, in the light of attending circumstances, he ought to have foreseen that his conduct might naturally and probably result in a personal injury to some one within the scope of his duty to protect, and the particular injury in question was such a result.

There is a still more striking feature in the verdict, in the light of the judgment, than any to which we have referred, in view of the undisputed evidence that, if the injury happened to the girl by any fault that could in any event be charged to appellants as actionable negligence, it was in respect to the unsteady motion of the mangle roll, and further in view of the undisputed evidence that the claimed unsteady motion of the roll existed so short a time before the injury occurred as to relieve defendants from any charge of negligence in not knowing thereof, from mere lapse of time, and of any negligence at all in regard to the matter in the absence of evidence of actual knowledge of the difficulty. Such feature is this: The jury found as a fact that appellants did not know of any difficulty with the move-

Groth vs. Thomann and another.

ment of the roll before the accident, and yet judgment went in favor of respondent. The finding of the jury, in the light of the evidence we have referred to, exonerated appellants from all fault, and should have led to a judgment in their favor. In saying this, we assume that, if the faulty working of the mangle roll was not the subject prominent in the judicial mind when the case was submitted to the jury, it must have been what ruled the situation in permitting the case to go to judgment as it did. Before the final decision occurred it must have been brought out with too much significance to admit, reasonably, of its being overlooked, that respondent made no claim, by evidence, that any fault of appellants caused her injury except that involved in the unsteady motion of the mangle roll. She said:

"I did not ask any one how to do the work. I thought I knew how to do it. I looked at others doing the work and did not think any instructions were necessary. They pushed the towels in with the palms of their hands with their fingers sticking up, and that is just exactly the way I did it. There is no reason so far as I know why my hand was caught except that the machine went faster than it had been going."

We must conclude that, from press of business or some other cause, the fact that the verdict exonerated appellants from the charge of negligence, as regards the condition of the mangle roll, was not comprehended by the trial court, else the judgment would not have been rendered as it was. Since no actionable negligence was found by the verdict in any view that can be taken of it, for want of any finding on the subject of proximate cause, it seems that the motion for judgment in defendants' favor should have been granted. It follows that the judgment should be reversed, and the cause remanded with directions to render judgment in favor of defendants, dismissing the action with costs.

*By the Court.*— So ordered.