GELO, Respondent, vs. PFISTER & VOGEL LEATHER COMPANY, Appellant.

*September 3—September 24, 1907.*

*Champerty and maintenance: Employer's liability insurance: Master and servant: Personal injuries: Defective machinery: Assumption of risk: Warning: Court and jury: Evidence: Instructions to jury: Special verdict.*

1. An insurance company which has insured against employer's liability the defendant in an action for injuries to an employee has such an interest in the controversy that an appeal taken and prosecuted by it in the defendant's name will not be dismissed on the ground of champerty or maintenance.
2. In an action for injuries sustained by plaintiff while operating a splitting machine in defendant's tannery by reason of his hand getting caught between a revolving cylinder and a hide which was being split, findings in a special verdict to the effect that the danger of such an injury to plaintiff while operating the

machine was not open and obvious, and that defendant failed to instruct him as to such danger, are *held* to be sustained by the evidence.

3. There being evidence tending to show that the risk of injury to the operator by getting his hand caught between the cylinder and the hide was increased by the fact that the machine was so defective that at times it became "locked" and continued in motion instead of stopping, as it was designed to do, when the operator removed his foot from the treadle, and that such defects were not open and obvious, it could not be held as matter of law that no warning or instruction to plaintiff as to the danger was necessary. *Roth v. Barrett Mfg. Co.* 96 Wis. 615, and other cases, distinguished.

4. Certain parts of the machine at which plaintiff was injured, being produced and identified by defendant's superintendent, were introduced in evidence by plaintiff. Defendant was afterwards permitted to withdraw the parts, re-assemble them, and place the machine where it was at the time of the injury; and thereupon a view was ordered. There was evidence that the machine had been used eight months after the accident and then taken to the repair shop, where it remained two months; but that otherwise it was substantially the same as when plaintiff was injured. The jury were instructed that, in determining whether the machine was in a reasonably safe 'condition at the time of the injury, all evidence on behalf of plaintiff as to the defective condition of certain parts was to be disregarded unless they were satisfied to a reasonable certainty that such defective condition actually existed at the time of the injury and was a proximate cause thereof. *Held*, that there was no error in the admission of the parts of the machine in evidence.

5. A question submitted for special verdict, as to whether there was a failure on the part of defendant to instruct plaintiff as to the danger of getting his hand caught in the machine, is *held*, in connection with the full charge of the court on that point, to have made it unnecessary to submit in the form requested by defendant the questions whether plaintiff was warned of the danger and whether he ought to have understood such warning.

6. Refusal to give a requested instruction to the effect that it was the duty of plaintiff, in case he did not understand the instructions given him as to the proper method of operating the machine, to indicate that fact to defendant's foreman, and that his failure to do so was contributory negligence, is *held* not to have been error, in view of the full and complete charge on that subject.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant operating a head-splitting machine, so called, used in the process of tanning beef hides. Issue being joined and trial had, the jury at the close thereof returned a special verdict to the effect (1) that the plaintiff was injured on or about January 20, 1905, while at work on a head-splitting machine in the defendant's tannery (by the court); (2) that such head-splitting machine was not at the time of the injury in a reasonably safe condition, considering the nature of the work in hand; (3) that there was a failure by the defendant to instruct the plaintiff as to the danger of getting his hand or hands caught between the hide and the cylinder while the machine was in operation; (4) that the failure of the defendant to instruct the plaintiff as to the danger of getting his hand or hands caught between the hide and the cylinder when the machine was in operation was the proximate cause of the plaintiff's injuries; (5) that the absence of any guard of the treadle from above which should prevent a person injured from falling upon the treadle was not an open and obvious condition; (6) that the danger that the plaintiff while operating the machine should get his hand or fingers caught between the hide and the cylinder, thereby receiving injuries, was not an open and obvious risk; (7) that the defendant was guilty of a want of ordinary care which was the proximate cause of the plaintiff's injuries; (8) that the plaintiff was not guilty of any want of ordinary care which contributed to produce his injury; (9) that they assessed the plaintiff's damages at $2,500.

On the defendant's motion to correct the verdict or to set it aside and grant a new trial, the court by order reduced the damages to $2,000 and ordered the verdict to stand for

that amount in favor of the plaintiff and against the defendant. Thereupon and on motion of the plaintiff judgment was entered in favor of the plaintiff and against the defendant for the amount of $2,000, with costs. From that judgment the defendant appeals.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* attorneys, and a reply brief signed by *Robert N. McMynn,* of counsel, and oral argument by *Mr. McMynn.*

For the respondent there was a brief by *Moritz Wittig,* attorney, and *W. B. Rubin,* of counsel, and oral argument by *Mr. Wittig.*

Cassoday, C. J. 1. The plaintiff moves to dismiss the appeal upon numerous grounds. The principal reason for the contention seems to be that the appeal taken in the name of the defendant and the undertaking given on that appeal were in fact taken and furnished by the Ætna Life Insurance Company of Hartford, Connecticut, and hence that the taking and prosecuting such appeal makes that company and its attorneys guilty of champerty and maintenance. It appears from the record and is conceded that at the time of the injuries in question the defendant held a policy of insurance issued by the said insurance company, wherein and whereby the defendant was, in the language of the policy, insured "against loss arising from legal liability for damages on account of bodily injury or death suffered within the period of this policy by any employee or employees of the assured resulting from any and every accident, of whatsoever nature or cause, happening in, upon or about the premises of the assured, as described in the schedule hereinafter given, and against the expense of defending any suit for such damages," with other stipulations therein contained. It further appears and is undisputed that the said insurance company, "having complied with the laws of this state relative to casualty insurance companies," was on March 1,

1904, by the commissioner of insurance of this state, "licensed to transact the business of employer's liability insurance in this state until the 1st day of March, 1905, inclusive." The statutes of this state authorized the incorporation of insurance companies "for the purpose of issuing policies for any of the" "kinds of insurance" and "suretyship business" therein prescribed, and, among other things, for "(1) insuring any person against bodily injury, disablement or death resulting from accident, and provide benefits for disability caused by disease. (2) Insuring any one against loss or damage resulting from accident to, or injury suffered by, an employee or other person, for which accident or injury the person insured is liable." Sec. 1966—25, Stats. (1898). The statute further provides: "Any casualty insurance or suretyship corporation organized under the laws of any other state or foreign country may be admitted to transact business in this state" in the manner therein prescribed. Sec. 1966—32, Stats. (1898). Such "casualty insurance" is well recognized as a legitimate variety of accident insurance. *Employers' L. Assur. Corp. v. Merrill,* 155 Mass. 404, 29 N. E. 529. The validity and binding force of the policy is conceded by the insurance company.

Of course, the defendant had the legal right to defend the action. The objection made by the plaintiff is that the defendant had no legal right, by the procurement of such policy, to authorize the insurance company to defend in its name. The claim is that such contract of insurance was champertous and void. "Champerty is" defined to be "the unlawful maintenance of a suit, in consideration of some bargain to have part of the thing in dispute, or some profit out of it." 2 Words & Phrases, 1045, citing numerous cases.

This court has held:

"Maintenance is an officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it." *Andrews v. Thayer,* 30 Wis. 228, 233.

In a later case this court said:

"The terms of this definition obviously do not include all kinds of aid in the prosecution of defenses of another's cause, and it has therefore always been held not to extend to persons having an interest in the thing in variance, nor to persons acting in the lawful exercise of their profession as counsel or attorneys at law. Nor does the doctrine of the common law as to maintenance apply to persons who either have a legal interest in the suit prosecuted by them or who act under the *bona fide* belief that they have." *Davies v. Stowell,* 78 Wis. 334, 336, 47 N. W. 370. See, also, *Gilbert-Arnold L. Co. v. O'Hare,* 93 Wis. 194, 200, 67 N. W. 38; *Dockery v. McLellan,* 93 Wis. 381, 388, 67 N. W. 733.

In view of the contract of insurance mentioned and what has been said, there can be no serious doubt but that the insurance company had a substantial interest in the controversy and in taking and prosecuting the appeal. The motion to dismiss the appeal must be denied.

2. Seven errors are assigned for the reversal of the judgment. The first and seventh are considered together by counsel for the defendant, and are to the effect that the court erroneously refused to direct a verdict in favor of the defendant, and erroneously refused to change the answers of the jury to the second, fifth, and sixth questions from the negative to the affirmative, and the third, fourth, and seventh questions from the affirmative to the negative. The two errors so assigned are, seemingly, based upon the theory that the danger in operating the machine was open and obvious and hence was assumed by the plaintiff, and that if otherwise the plaintiff was sufficiently instructed as to the danger of getting his hand caught between the hide and the cylinder while the machine was in operation to free the defendant from the charge of negligence in that regard. The machine is described by the defendant's counsel as being

"constructed with two A frames, the framework being of iron. As the operator faces the machine there is a cylinder

seventeen or eighteen inches in circumference which revolves towards him, and when in operation makes about thirty revolutions to the minute. On this cylinder there are two grooves, diametrically opposite to each other, into which the operator presses the hide. About four inches from the cylinder, as the operator faces same, is what is known as the splitting knife. This knife is bolted down to a sliding bed. In front of the knife there is a plate close up to the edge of the knife and even with it, its purpose being to prevent the operator from cutting himself when he wishes to straighten out the hide. Directly over the knife is an iron roller, which can be raised or lowered by means of a lever at the side of the machine. That part of the hide which the operator wishes to split is placed over the knife, and then the iron roller is pressed down upon it, thus holding the hide securely in place. The rest of the hide is carried over the large cylinder, which the operator faces, and hangs down in front of him. The machine is started by stepping upon and pressing down a board, which causes a lever to lift, and power is transmitted by means of levers and cogwheels. Power is transmitted from the main driving shaft by means of a belt. This belt is connected with a pulley, and on this pulley is a little pinion. The pinion drives the cylinder. In operating the machine the operator first throws the hide over the cylinder, placing that part of the hide which is to be split between the iron roller and knife, and he then, by means of a lever, presses the iron roller down upon the hide. After this is done, the operator takes hold of the skin with both hands, fingers down, and presses same into one of the grooves on the cylinder. He then steps upon the wooden treadle, and this causes the cylinder to revolve towards him, pulling the skin over the knife, and the thick head of the hide is split to the thickness of the rest of the skin. The ordinary cut or split is six or seven inches. Two holds will generally pull a hide through. If the hide is a long one, the operator simply releases his hold and takes another hold, as described above. If the hide is a heavy one, so that the operator cannot hold it, he then binds the hide, and to do this he places his hand back and over the cylinder and at the side thereof, grabs the hide and draws it around the cylinder, and then steps upon the treadle, and the hide binds itself. To stop the ma-

chine the operator has to remove his foot from the treadle.
Binding is necessary only in the case of thick hides.  Ordi-
narily the operator fastens the skin in the groove, holds it
for a short distance, and if the head is not split in the first
hold he makes another until the head is split."

There is evidence tending to prove that some years prior
to the injury the machine had been provided with an iron
treadle which had been broken, and in its place the wooden
treadle mentioned had been substituted; that at the time of
the injury the machine was more or less worn; that the bolts
and boxes had become somewhat loosened; that the cylinder
would move up and down, and jerked; that the machine at
times became "locked"—that is, continued in motion when no
weight rested on the treadle—and such were the facts at the
time of the injury; that such defects were not open and ob-
vious; and that the plaintiff was not instructed nor informed
as to the danger.  The plaintiff testified to the effect that he
was at the time a married man twenty-five years of age, born
in Slavonia, and was unable to speak English or German, and
had no experience with machinery until he began work for
the defendant; that after working for the defendant three
days the foreman put him to work on the machine in ques-
tion and showed him where to put the hide into the ma-
chine and then how to step onto the pedal, and further did
not show him anything; and that he did not understand what
the foreman said to him in respect to the work.  We cannot
say, as a matter of law, that the findings of the jury men-
tioned are not sustained by the evidence.

· 3. Errors are assigned for the admission in evidence of
disconnected parts of the machine in question.  Such parts
of the machine had been brought into the court by the de-
fendant's superintendent, pursuant to a subpœna served upon
him, and by him they were respectively identified.  After the
plaintiff's testimony had been put in and the defendant had
put in testimony covering more than forty pages of the

printed case, the defendant asked permission to withdraw the parts of said machine designated by Exhibits 4 to 11, inclusive, "for the purpose of re-assembling the parts into a machine." Such request was granted, against the plaintiff's objection, until the following afternoon or the further order of the court. Thereafter the several parts of the machine so withdrawn were re-assembled by the defendant and placed where the machine was at the time of the injury, as the machine in question. There was evidence on the part of the defendant to the effect that after the injury the machine was used for eight months and then taken to the repair shop, where it remained for two months; but that otherwise it was the same as it was when the plaintiff was injured, except that four new split pins, having nothing to do with the running, had been put in, and the different parts had been oiled. Thereupon a view was ordered, with the right of the plaintiff to first inspect the machine. There was testimony on the part of the plaintiff tending to prove that temporary repairs had been made on some of the parts of the machine so re-assembled—new washers, as well as new split pins, washers on all the joints; that such washers and pins made a difference in looseness and tended to prevent locking, but the machine could be locked; that the machine had just been oiled, and that would make a difference about locking. The defendant moved to strike out all testimony as to any other machine than the one in question. The court held that it was a question for the jury, upon all the evidence, to determine the identity of the machine and the identity of the specific parts, but instructed the jury that the testimony as to the machine, other than the one on which the plaintiff was injured, was limited to the machine which was presented to the plaintiff for inspection by the defendant on the Friday before the trial was resumed; and the consideration of all other machines, in connection with the testimony of the witness given on that day, was thereby ordered to be eliminated from the case. In charging

the jury on the question whether, at the time the plaintiff was injured, the machine in question was in a reasonably safe condition considering the nature of the work in hand, they were instructed:

"In determining your answer to the second question of the special verdict, I instruct you that any and all evidence upon behalf of plaintiff in respect to the defective condition of certain parts of the machine at the time and place in question must be absolutely disregarded by you, unless you are satisfied to a reasonable certainty not only that such defective condition actually existed at the time of the injury, but also that such defective condition was a proximate cause of the plaintiff's injuries."

We find no reversible error in the admission of evidence.

4. It is claimed that the special verdict is defective in failing to submit to the jury questions covering all the litigated issues of fact necessary to determine the proximate cause of the accident. No such failure is pointed out in the brief and we find none. The principal grievance mentioned in the brief seem to be that the court submitted to the jury questions which should have been determined by the court as a matter of law. That is fully covered by what has already been said. True, the verdict contains two findings on the subject of proximate cause, but the answers of the jury are not inconsistent, and the court charged the jury substantially the same as to both. We must hold that the special verdict is sufficiently broad to cover all the issues in the case.

5. Error is assigned because the court did not submit to the jury, in the form requested, the question whether the plaintiff was warned of the danger on the evening he was injured, and whether the plaintiff ought to have understood such warning. The third question of the special verdict submitted to the jury the question whether there was any failure on the part of the defendant to instruct the plaintiff as to the danger. The charge of the court to the jury on that question was full and covered all that was so requested.

They were told, in effect, that the burden of proving that there was a failure on the part of the defendant to so instruct was on the plaintiff; that there was no obligation to warn him against open and visible danger readily comprehended by men of ordinary intelligence; that if the instructions given were sufficient to put the plaintiff on his guard and enable him to comprehend the danger, then the plaintiff must be presumed to have comprehended and appreciated the risk of injury; that it was not necessary for the employer to anticipate every possible risk or accident; that the defendant had the right to assume that the plaintiff was a person of ordinary intelligence and would comprehend the instructions given as well as other persons of ordinary intelligence; that, in the absence of evidence to the contrary, the presumption was that the employee had sufficient intelligence to comprehend the danger incident to his employment. The charge fully covered all that was so requested.

6. Error is assigned because the court refused to give the whole of an instruction requested under the eighth question submitted. The eighth question covered the plaintiff's alleged contributory negligence. The charge of the court under that question was full and complete and covered more than a page and a half of the printed case. It is conceded that the court gave most of the instruction requested. The complaint is to the effect that the court failed to give that portion of the instruction requested which would have made it the duty of the plaintiff, in case he failed to understand the instructions given, to indicate that fact to the defendant's foreman, and that his failure to do so was contributory negligence. Such an instruction would have made the question of the plaintiff's contributory negligence turn upon the fact whether he did or did not so indicate his failure to understand the instructions given. The court did instruct the jury to the effect that the defendant had the right to assume that the plaintiff would see and appreciate all dangers open and

obvious to a person of ordinary intelligence; that he assumed the risk of such dangers; that if the plaintiff understood, or ought reasonably to have understood, such instructions, then the plaintiff was guilty of contributory negligence; that if either or both of the defendant's foremen instructed, or attempted to instruct, the plaintiff as to the safe and proper manner of operating the machine, then the defendant had the right to assume that the plaintiff was a person of ordinary intelligence and comprehended such instructions as well as other persons of ordinary intelligence under like or similar circumstances. We find no error in such refusal to instruct.

*By the Court.*—The motion to dismiss the appeal is denied, with $10 costs of motion. The judgment of the circuit court is affirmed.

MARSHALL, J. I think that it should be said that *Roth v. S. E. Barrett Mfg. Co.* 96 Wis. 615, 71 N. W. 1034; *Schiefclbein v. Badger P. Co.* 101 Wis. 402, 77 N. W. 742; *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178, and similar cases were considered as to the contention of counsel for appellant that the danger of plaintiff getting his hand caught was obvious and that hence he needed no instruction; that the opinion of the court is that the rule in such case does not apply here, because of the defect in the machine rendering it liable not to operate as designed as to stopping upon the treadle being released; that because of such fact this case falls within the doctrine of *Anderson v. Chicago B. Co.* 127 Wis. 273, 106 N. W. 1077.