GUILLERMO CRUZ, Plaintiff and Appellee, *v.* WHITE STAR BUS LINE, INC., Defendant and Appellant.

No. 6397. Argued January 8, 1934.—Decided April 3, 1934.

*C. Iriarte* and *F. Fernández Cuyar* for appellant. *J. Valldejuli* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action for damages arising out of a certain accident. It was decided in favor of the plaintiff on March 7, 1933. The defendant appealed to this Supreme Court. The transcript was filed in June 1933. In the following month of July the appellee moved for the dismissal of the appeal because it was frivolous. The appellant opposed this in a well-reasoned motion and the court denied the motion to dismiss. The transcript comprises more than 230 pages and the motion in opposition to the dismissal showed, seemingly, a case worthy of study.

The appellant requested several extensions for filing his brief which were granted. The appellee opposed the granting of new extensions and the brief was finally filed on October 9, 1933, and on December 7 following, the appellee again requested the dismissal of the appeal on the ground of frivolity, arguing extensively and carefully against every one of the errors assigned by the appellant.

On January 8 last, both parties were heard on the merits of the motion which are also relied upon for the appeal,

and if the latter is not finally decided now, perhaps a new hearing might not be set for the purpose of going into the merits until the term of November 1934, or that of January 1935.

This being the case, as we have been enlightened on two occasions by the arguments of the attorneys for both parties, as all of the issues are raised by the appellant in its brief and challenged by the appellee in his motion, as the complete transcript is before us, and as it has become necessary for us to study the entire case, which study has led us to the conclusion that the judgment appealed from must be affirmed, we will therefore so decide. From a consideration of all of the questions raised by the appellant, the appeal appears indeed to be frivolous.

The first error is assigned as follows:

"The lower court committed manifest error and acted with passion, prejudice, and bias in weighing the evidence presented by the parties and in holding that 'the plaintiff's theory is the most plausible and the most probable,' and that the conduct of the chauffeur of the defendant was the efficient cause of the damage."

In the statement of the case and opinion relied upon for his judgment, the district judge says:

"Guillermo Cruz, merchant and resident of Río Piedras, brought an action against the White Star Bus Line, Inc., which is a corporation organized under the laws of Puerto Rico and engaged in transporting passengers in busses between San Juan and Río Piedras, to recover the sum of $15,600 as compensation for damages resulting from injuries to his left arm while he was traveling as a passenger in one of the busses of the defendant.

"On or about December 8, 1931, at about 7 o'clock in the evening, the plaintiff boarded at Río Piedras as a paying passenger, bus No. P–29 going to San Juan and belonging to the defendant, which was driven by chauffeur Juan Martínez who was then and there acting as an employee and for the benefit of the defendant, and at stop 37 of said route from Río Piedras to San Juan there was a collision or scraping between said bus and truck No. C–1171, driven by Pablo Rivera, which was going in the opposite direction, that is, from

San Juan to Río Piedras, the plaintiff receiving several injuries consisting of the left arm being fractured in three places and the crushing of the bones of the said arm.

"The evidence of the plaintiff consisting of the testimony of Guillermo Cruz, Dr. Basilio Dávila, Marcelo Clemente, Pablo Rivera, Leocadio Márquez, Vicente Machuca, and Juan Félix Fuentes, has tended to show that from the time it left Río Piedras for San Juan the bus of the defendant, driven by said chauffeur, Juan Martínez, and carrying many passengers, was traveling at high speed to which fact the chauffeur's attention was called by several passengers; that two or three times the bus tried to pass a touring car driven by Juan Félix Fuentes, which was traveling ahead rather fast at 30 or 35 miles an hour; that on reaching stop 37, Hato Rey, the automobile continued ahead of the bus, increasing its speed so as not to let the bus pass, while the truck driven by Pablo Rivera was approaching from the opposite direction and the bus, trying to pass the touring car, took to the center of the highway in such a manner that, because of insufficient room, faced the truck and as a result the left side of the bus struck or scraped the left side of the truck; that at that moment a women who was with her husband on a front seat shrieked, and the plaintiff who was seated in the third seat on the left side of the bus, got up quickly and grabbed one of the iron bars of the left railing of the bus at the time both vehicles were passing each other, receiving first an injury to the forefinger of his left hand and then a fracture of the wrist and, as he was unable to move his arm, the forearm and the humerus were also fractured; that the truck was traveling slowly along its right; that the bus failed to stop when the accident occurred and continued on its way and at about two stops farther ahead turned, found, and took the injured man to Río Piedras, first to the municipal hospital and later to the Pereira Leal Clinic, and that he remained there and was attended during 25 or 30 days by Dr. Pereira Leal and Dr. Basilio Dávila, and afterward he called for daily treatment during 2 or 3 months and has become incapacitated 75 or 80% in the use of his left arm.

"The evidence of the defendant, through the testimony of Juan Martínez, Ana María Ayala de Pagán, Jacinta Vega, Marina Billour (sic), Ramón Delgado, José Olavarrieta, and Gabriel Hernández, tended to show that the bus was traveling at a low speed, slowly, at about 12 or 15 miles an hour on its right; that ahead of the bus, in the direction of San Juan the touring car was traveling at a distance of about 12 or 15 meters, and that the truck was going from

San Juan to Río Piedras; that the touring car passed the truck that was traveling over the center of the road, and then said truck swerved toward the bus, scraping the back part of the bodies of both vehicles; that Guillermo Cruz was in the third seat on the left side with his arm resting along the window sill but not sticking out, according to the witness Marina Billour (*sic*), nor with his hand on his head and the elbow on the railing without sticking it out, because he would have been warned according to the chauffeur Juan Martínez, and that when the two vehicles scraped, the bus was shaken, the wife of Ramón Delgado shrieked and Guillermo Cruz also shrieked and exclaimed 'My God,' as his left arm was fractured; that the bus continued on its way until it found room to turn and then returned to Río Piedras taking the injured man to the hospital; that the scraping was slight, on the exterior left side of the bus, which carried a sign inside saying that the company was not responsible in case of accidents caused by passengers sticking their heads or arms outside of the windows; and that the plaintiff was the only passenger who was injured in that accident.

"The evidence is contradictory, as usually occurs in cases of damages arising out of accidents in the operation of motor vehicles. The theory of the plaintiff is the most plausible and the most probable. The collision was a scraping between the bus and the truck on the left side of both vehicles, due to the negligence of the driver of the bus in attempting to pass the touring car while racing it at a speed greater than is allowed considering the width of the road and the traffic, since, in meeting the truck, the space was found to be insufficient, although the latter vehicle was traveling on its right side of the road.

"With the exception of the chauffeur Juan Martínez who, under direct examination, stated that Guillermo Cruz had his arm sticking outside of the railing or his hand on his head with the elbow on the railing—whereas on cross-examination he stated that he had not seen his elbow sticking out of the railing, because he would have warned him—no other witness testified, as claimed by the defendant, that the plaintiff stuck his arm out of the window by the seat he was occupying, since Marina Billour (*sic*) merely stated that the plaintiff had his arm resting on the window sill, inside of the iron railing, and 'as we usually put it'; without any implication of such negligence on the part of the passenger as will defeat his recovery in case of an accident due to the negligence of the driver."

In arguing the error assigned the appellant says in his brief:

"The evidence was conflicting on the essential points of the case. It was necessary and logical, therefore, in order to solve such conflict justly and impartially, to consider first the facts on which all of the witnesses of both parties agreed, and then the undisputed physical facts, which proof, according to the fundamental principles of evidence, should have more probative value than any number of statements that might be presented to destroy it. (See *Groth* v. *Thomann*, 110 Wis. 488, 496; 86 N. W. 178, 181.)"

And the appellant goes on to allege that all of the witnesses agreed that the collision was a mere scraping, that only one passenger among the many traveling in the bus, was injured and that the scraping did not occur when the three vehicles were parallel to each other but while the touring car was ahead of the bus. It maintains that those circumstances should necessarily have lead the court to solve the conflict of the evidence against the plaintiff.

We do not agree. The scraping may have been slight, but it is a fact beyond dispute that the injuries received by the plaintiff were due to it. That other passengers did not receive injuries may indeed be admitted to be due to the lightness of the collision, but that does not destroy the fact that the plaintiff could have been injured in the manner alleged. The trial court found that he was so injured. The fact that the scraping of the bus by the truck took place before the bus had passed the touring car, does not necessarily imply that it was not due to the negligence of the driver of the bus in trying to pass the said car.

There is nothing to show passion, prejudice, or bias on the part of the trial court. No material fact has been shown by the appellant inevitably leading to the conclusion that the said court weighed the evidence erroneously.

The second assignment is as follows:

"The trial court erred in holding, as a question of law, that the plaintiff was not negligent in resting his arm on the window sill of the bus."

In discussing it the appellant cites a good number of cases of courts and some text writers in support of the proposition that when a passenger travels with an arm protruding through the railing, especially if the driver forbids it by means of a rule which is placed in a visible spot of the vehicle, and an accident happens to the passenger, the latter should be considered guilty of contributory negligence, and therefore barred from recovering from the owner of the vehicle even though the chauffeur of the same may also have been negligent in driving it.

Corpus Juris sums up the cases on the matter as follows:

"It is the prevailing rule that it is negligence per se for a passenger on a railroad voluntarily or inadvertently to protrude his arm, hand, elbow, or any other part of his body through the window of a moving car beyond the outer edge of the window or outer surface of the car, so as to come in contact with objects or obstacles near the track, and that no recovery can be had for any injury which but for such negligence would not have been sustained. But according to some authorities the question as to whether a passenger is guilty of contributory negligence when riding in this manner, and receiving an injury by reason of that fact, is for the determination of the jury under all the circumstances of the case. It is not negligence for the passenger to sit with his elbow on the window sill, the window being open, but without protruding it beyond the car, although by reason of some sudden jolt or jar his arm is thrown outside and he is injured. As to street cars there is less strictness in the rule with reference to the elbow or arm projecting, or holding on to the posts of an open car, or the like, than in the case of ordinary railroads, and it is generally held not to be negligence per se so to do, but it is a question of fact depending on the circumstances of the case." 10 C. J. 1139.

Admitting that the same rule is applicable to busses engaged in the public transportation of passengers, let us see what were the circumstances in this concrete case.

After having found the facts just transcribed, the trial court cited some cases and proceeded as follows:

"The conduct of the chauffeur of the defendant was really the efficient cause of the damage. The plaintiff was not negligent, since

he cannot be so considered, under the circumstances of the case, because his arm was resting on the window sill and he was holding to the bars or posts, for which he had necessarily to extend his hand outwards, when owing to the negligence of the chauffeur of the defendant, without which the damage would not have occurred, the motion or shaking of the vehicle, the shriek of a passenger, and the collision or scraping of the two vehicles occurred.

"This is not the case where a passenger voluntarily assumes a dangerous position, without taking such precautions as would be taken by a prudent and reasonable man to avoid injury, or where the injury is the direct result of his own carelessness or negligence, which prevents him from recovering damages for the injuries sustained; nor is the company relieved of responsibility in similar cases because of the fact that it had placed in the vehicle the sign prohibiting the passengers from putting their heads or arms outside of the windows."

An analysis of the evidence fails to show, in our opinion, that the plaintiff was traveling with his arm protruding. Referring to the two statements which might be considered most favorable to the defendant, those of its witnesses Juan Martínez and Marina Brillón, we find that the former, who was the driver of the bus in which the plaintiff was traveling, testified on direct examination as follows:

"A. Can you describe to us how he was seated?—W. I saw him in this position.—A. Where was his arm resting?—W. I did not notice whether it was on top of the railing or protruding outside of the...—A. (int) You did not notice?—W. I did not.—A. But were you aware whether his arm was inside of the bus, or on the back of the seat, or protruding outside of the bus, resting on the window rails of the bus?—W. Not inside the bus.—A. Are you sure of that?—W. I am.—A. Why are you sure of that?—W. Because I noticed his head and I thought he was a little asleep, intoxicated; I noticed that he was asleep in the bus."

But that same witness during the cross-examination testified as follows:

"A. Between those iron rails at the sides and the opening, or the window sill cannot the elbow rest...—W. (int) One can, if he sits straight.—A. Did you see whether Mr. Cruz's elbow was protruding?

—Did you?—W. If I had, I would have warned him.—A. Then when you saw him leaning you did not see that any part of his body was protruding?—W. That's why I told you that I had not noticed it.—A. But if it had been protruding you would have warned him, would you not? If his elbow or arm had protruded you would have warned him upon noticing it?—W. If I had noticed it I would have warned him.''

Witness Brillón on direct examination testified as follows:

''A. Tell the court what you saw.—W. I was coming in the bus and while in Hato Rey, a truck passed going fast and scraped the bus. I noticed that it had injured the arm of Mr. Guillermo Cruz; he had it on the window sill . . .—W. When the truck scraped the bus, Guillermo Cruz, whose arm was leaning on the window sill, received a very hard blow in the arm.—A. Did you see Mr. Cruz before the accident?—W. I did.—A. And did you see his arm resting on the window sill?—W. Yes, sir, he had it resting on the window sill . . .—A. And what happened to you as a result of the collision? —W. I was only frightened as the bus nearly went into the ditch.''

On cross-examination by the attorney for the plaintiff, she said:

''A. Was there room to rest the arm without sticking it out?— W. There was. He leaned on the window sill as we usually do.—A. Place it there. And outside of that railing there was something of iron, wasn't there?—W. There was.—A. And his arm was resting between the iron and the window frame? Like this?—W. It was.— A. Like this? In a straight line on the window sill?—W. I said he had it on the window sill.''

On the basis of the evidence presented in this case, the cases cited by the appellant are not applicable.

The third assignment is to the effect that the court erred in fixing the damages at $2,450 and the fourth and last that it also erred in awarding costs to the plaintiff.

Let us again hear the trial court in setting forth the grounds for its decision. It says:

''The evidence showed that the plaintiff suffered a great deal as the result of the fracture of his left arm, that he is unable to close

his hand or bend his arm, as the elbow is out of place, and that he has been incapacitated about 80% in the use of the arm.

"The plaintiff used to work as chief clerk in the business of his brother-in-law, Julio Rivera Mojica, in Río Piedras, where he earned a monthly salary of $60.00 plus 33% of the profits; and after the accident he continued to render services in the store, although not as before, due to his partial permanent incapacity in the use of his left hand, and he receives for his services a compensation which covers his food and clothing representing an amount of $35.00 or $50.00 a month. There is no definite basis for determining the profits that according to the plaintiff amounted to $90.00; that is, more than his salary.

"The plaintiff deposited $50.00 in the Pereira Leal Clinic in Río Piedras where he was hospitalized, and was charged $5.00 per day; besides, he has to pay Dr. Basilio Dávila $200 for his medical services and care during two months, including the value of four X-Ray plates, and $200 to Dr. Pereira Leal who also treated him. The sums given to the nurses as tips or gifts cannot be recovered. There was no evidence of the sums disbursed for medicines.

"For physical and moral suffering, and anguish endured because of the injuries, as well as for the partial permanent incapacity of 75 to 80% of the use of the left arm, the injured person not being entirely incapacitated for the work of a commercial clerk, since he has the use of his right hand, the court orders that compensation amounting to $2,000 be paid, plus $450 for medical and hospital expenses."

The attendant circumstances as set forth by the trial court appear from the evidence and justify the sum fixed as damages.

The costs, were properly awarded. The plaintiff was compelled to go to court to recover damages. The defendant denied the negligence imputed to its chauffeur and in its turn imputed negligence to the plaintiff and when the case was submitted to a court of justice for determination, the latter unhesitatingly decided in favor of the plaintiff. The imposition of costs on the defendant, who unjustifiably caused them to be incurred, was the right thing to do.

As the errors assigned have not been committed, and as the judgment appealed from can not possibly be reversed. the appeal should be dismissed.